## ROLLER *v.* HOLLY.

ERROR TO THE COURT OF CIVIL APPEALS FOR THE FOURTH
SUPREME JUDICIAL DISTRICT OF TEXAS.

No. 104. Submitted January 18, 1900. — Decided February 26, 1900.

A state statute authorizing service of process by publication or otherwise upon absent and non-resident defendants, has no application to suits *in personam;* but is a sufficient authority for the institution of suits *in rem,* where, under recognized principles of law, such suits may be instituted against non-resident defendants.

Where a statute specifies certain classes of cases which may be brought against non-residents, such specification operates as a restriction and

limitation upon the power of the court; but where the power is a general one it is, as respects suits *in rem*, subject to no limitation.

Where service of process was made upon a defendant residing in Virginia, requiring him to appear and answer a suit in Texas within five days, it is held that such notice was not a reasonable one, was not " due process of law " within the Fourteenth Amendment to the Constitution of the United States, and that a judgment obtained upon such notice was not binding upon the defendant.

This was an action instituted July 14, 1894, by the plaintiff Roller in the District Court of Limestone County, Texas, to recover a judgment against Stephen Holly and William Holly upon five promissory notes for $228 each, dated January 1, 1890, payable to plaintiff, for the purchase price of a tract of one hundred and fourteen acres of land in that county, sold by him to them, and also to foreclose a vendor's lien upon the land to the amount of such notes.

To this action Joseph Peoples, H. W. Williams and W. T. Jackson were also made parties defendant under an allegation that they were asserting an interest in the land; and a foreclosure of the vendor's lien was sought as against them. The defendants were all duly cited; the Hollys failed to answer, but the defendants Peoples, Williams and Jackson filed an amended answer at the January term, 1895, of the court, in which they alleged that the plaintiff Roller bought the land in question from John W. and Cora E. Jordan in January, 1887, and gave in part payment therefor his note for $216.17, due November 1, 1890, in which note as well as in the deed made to him a vendor's lien was retained; that before the maturity of this note the firm of McClintic & Proctor had become its owners, and on December 24, 1890, began in the District Court of Limestone County a suit against the plaintiff for a foreclosure of the vendor's lien upon the land; that, " after due service being had," McClintic & Proctor on January 9, 1891, recovered a judgment against the plaintiff for $276.65, with interest and costs of suit, and an order for the foreclosure of the vendor's lien; that an order of sale was issued, and on March 3, 1891, the land was sold by the sheriff of Limestone County for $300, and bought by defendant Williams, who paid the amount to the sheriff, though the defendant Jackson was interested with him

in the purchase, and on May 4, 1891, the two sold the land to their codefendant Peoples.

Prayer: That in the event plaintiff recovered the land as against the defendants Williams, Jackson and Peoples, they recover of plaintiff the $300 paid for the land, and that the same be decreed a lien thereon.

To this amended answer plaintiff filed a first supplemental petition, consisting of demurrer, exceptions and answer, containing —

First. A general denial.

Second. That at the time of the institution of the suit of McClintic & Proctor against him, plaintiff was a citizen of the State of Virginia, and resided in the county of Rockingham, in said State.

That in January, 1890, he sold and conveyed the land in controversy to Stephen and William Holly by written instrument signed by him, and took the notes sued on as purchase price of the land.

That he put his said vendees in possession of the land, and that they were in possession of the land at the time of the institution of the McClintic & Proctor suit and had been in possession since the sale to them, and that neither they nor the Jordans were made parties to that suit.

That the McClintic & Proctor judgment was void as to plaintiff, because the District Court of Limestone County, Texas, never acquired jurisdiction over him nor the property in question.

That the judgment was not obtained nor was the sale of the land made and obtained by due process of law, but was in contravention of the Fourteenth Amendment to the Constitution of the United States.

That service of process on him in the McClintic & Proctor suit was obtained without the jurisdictional limits of the State of Texas, to wit, in the county of Rockingham and State of Virginia.

That no writ of attachment or other writ was levied on the land.

Third. That the proceedings in the McClintic & Proctor

suit prior to the judgment and the allegations in the petition were ineffectual to confer jurisdiction on the District Court of Limestone County over either the person of plaintiff or the land.

Fourth. That the time given him in which to answer the suit of McClintic & Proctor before the actual rendition of their judgment was not reasonable notice, nor such due and orderly proceedings, under the facts and circumstances as disclosed by the record thereon, as the law requires.

Fifth. That the lien attempted to be enforced in the McClintic & Proctor suit was an equitable lien, created by operation of law, and there has been no legislation in Texas authorizing such suit.

Upon an agreed statement of facts, substantially as above, judgment was rendered by default in favor of plaintiff against the Hollys for $1722.66, but the court refused to enforce the vendor's lien against the land, and gave judgment against plaintiff and in favor of Williams, Jackson and Peoples for costs. Plaintiff appealed to the Court of Civil Appeals, which affirmed the decree of the District Court. 13 Tex. Civ. App. 636. Plaintiff thereupon applied to the Supreme Court of the State for a writ of error, which that court refused; whereupon he sued a writ of error from this court.

*Mr. W. S. Laidley* and *Mr. John E. Roller* for plaintiff in error.

*Mr. W. T. Jackson, Mr. H. W. Williams* and *Mr. J. Peeples* for defendants in error.

Mr. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

Briefly stated, the case is this: Roller, the plaintiff, who was a resident of Virginia, bought this land in January, 1887, gave a note in part payment for $216.17, which passed into the hands of McClintic & Proctor, who brought suit thereon for a personal judgment against the plaintiff, and for the fore-

closure of a vendor's lien upon the land; served plaintiff with notice of the suit in Virginia, December 30, 1890, to appear in Texas January 5, 1891, and took judgment against him by default January 9, 1891, for $276.65, and for a foreclosure of the lien. Upon a sale in pursuance of this foreclosure, March 3, 1891, the land was struck off to Williams and Jackson, and by them sold to Peoples.

Meantime, however, and on January 1, 1890, a year before the McClintic & Proctor suit was begun, plaintiff sold the land to the Hollys, who went into possession, and took from them five notes of $228 each, and also reserved a vendor's lien, which he sought to foreclose in this suit. Williams, Jackson and Peoples, who purchased the land under the sheriff's sale in the McClintic & Proctor suit, were made parties defendant, and now aver that the plaintiff's title passed to them, which plaintiff denies upon the ground that no process was served upon him within the State of Texas, or within a reasonable time before he was required to appear and answer.

The question in dispute, then, is whether a notice served upon the plaintiff in Rockingham County, Virginia, December 30, 1890, to appear in Limestone County, Texas, on January 5, 1891, to answer the foreclosure suit is due process of law within the meaning of the Fourteenth Amendment? The Hollys, who bought this land and went into possession a year before the McClintic & Proctor suit was begun, were not made parties to that suit, probably because the deed from the plaintiff to them was not on record in Limestone County at the time of the institution of the suit, and their rights are not involved here. It is conceded that the McClintic & Proctor judgment is invalid as a personal judgment against the plaintiff under the case of *Pennoyer* v. *Neff*, 95 U. S. 714, 723, and other cases in Texas of the same import.

1. The position of the plaintiff that, as there was no statute in Texas authorizing a suit against a non-resident to enforce an equitable lien for purchase money, and as there had been no seizure *in rem* of the lands, nor any notice to Roller's vendees, the Hollys, who were in possession, the jurisdiction of the Texas courts could not attach, and the whole proceeding was void, is unsound.

In the case of *Hart* v. *Sansom*, 110 U. S. 151, relied upon in support of this contention, an action of ejectment was brought against several defendants, who set up in defence a judgment against the plaintiff as one having some pretended claim or title to the lands, and other defendants holding recorded deeds thereof, which were averred to be fraudulent and void. Plaintiffs in that suit averred that these pretended deeds and claims cast a cloud upon their title; and that one of the defendants had ejected them from the lands and withheld possession from the plaintiffs. Due service was made on the other defendants, and a citation to Hart, who was a citizen of another State, was published as directed by the local statutes. All the defendants were defaulted, and upon a writ of inquiry the jury found that Hart claimed the land, but had no title by record or otherwise, and returned a verdict for the plaintiffs upon which judgment was entered for a recovery of the land, the cancellation of the deeds and the removal of the cloud upon the title. It was held that this judgment was no bar to an action by Hart in the Circuit Court of the United States, to recover the land against Sansom, who held under a lease from the plaintiffs in the former suit. We held that none of that judgment was applicable to Hart, since that part which was for recovery of possession could not apply to him, as he was not in possession; and that part which was for the cancellation of the deeds set up in the petition, was a decree *in personam* merely, and could only be supported against a non-resident of the State by actual service upon him within the jurisdiction of the State, and that constructive service by publication was not sufficient. Neither of the plaintiffs, however, was in possession of the land or claimed a lien thereon.

In *Arndt* v. *Griggs*, 134 U. S. 316, it was held directly that a State may provide by statute that the title to real estate within its limits shall be settled and determined by a suit in which a non-resident defendant is brought into court by publication. It appeared in that case that a suit had been begun by a party alleging that he was the owner and *in possession of* the land in controversy, by virtue of certain tax deeds, against defendants claiming to have some title or interest in

the lands by patent from the United States, which title, as was alleged, was divested by the tax deeds, and was unjust, inequitable and a cloud upon plaintiff's title, and that the suit was brought for the purpose of quieting such title. The defendants were brought in by publication, and a decree entered in favor of plaintiff quieting his title. The question was whether that decree was a bar to an action in ejectment between the grantees of the respective parties to the proceedings to quiet title. In other words, as put by the court: " Has a State the power to provide by statute that the title to real estate within its limits shall be settled and determined by a suit in which the defendant, being a non-resident, is brought into court only by publication ? " The question was answered in the affirmative. In delivering the opinion of the court Mr. Justice Brewer observed : " The question is not what a court of equity, by virtue of its general powers and in the absence of a statute, might do, but it is, what jurisdiction has a State over titles to real estate within its limits, and what jurisdiction may it give by statute to its own courts, to determine the validity and extent of the claims of non-residents to such real estate ? If a State has no power to bring a non-resident into its courts for any purpose by publication, it is impotent to perfect the titles of real estate within its limits held by its own citizens ; and a cloud cast upon such title by a claim of a non-resident will remain for all time a cloud, unless such non-resident shall voluntarily come into its courts for the purpose of having it adjudicated. But no such imperfections attend the sovereignty of the State. It has control over property within its limits ; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subjection to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto. It cannot bring the person of a non-resident within its limits — its process goes not out beyond its borders — but it may determine the extent of his title to real estate within its limits ; and for the purpose of such determination may provide any reasonable method of imparting notice. . . . Mortgage liens, mechanics' liens,

material-men's liens and other liens are foreclosed against non-resident defendants upon service by publication only. Lands of non-resident defendants are attached and sold to pay their debts ; and indeed, almost any kind of action may be instituted and maintained against non-residents to the extent of any interest in property they may have in Kansas, and the jurisdiction to hear and determine in this kind of cases may be obtained wholly and entirely by publication."

This case is readily distinguishable from that of *Hart* v. *Sansom* in the important fact that the plaintiffs in the judgment set up as a defence in that case were *out of* possession while the defendants were *in* possession, and the action was really in ejectment with a somewhat superfluous prayer for the cancellation of all the deeds under which the defendants claimed title. In *Arndt* v. *Griggs* the plaintiffs were in possession, under tax deeds it is true, but having a *prima facie* valid title which they sought to vindicate against the former owners.

The substance of these cases is that if the plaintiff be in possession, or have a lien upon land within a certain State, he may institute proceedings against non-residents to foreclose such lien or to remove a cloud from his title to the land, and may call them in by personal service outside of the jurisdiction of the court, or by publication, if this method be sanctioned by the local law.

In suits for the foreclosure of a mortgage or other lien upon such property, no preliminary seizure is necessary to give the court jurisdiction. The cases in which it has been held that a seizure or its equivalent, an attachment or execution upon the property, is necessary to give jurisdiction are those where a general creditor seeks to establish and foreclose a lien thereby acquired. Of this class *Cooper* v. *Reynolds*, 10 Wall. 308, is the most prominent example. In that case a plaintiff in an action for false imprisonment had attached the property of Reynolds in certain lands, which were sold upon execution to Cooper, who was put in possession by the sheriff. Reynolds, the original owner, brought ejectment against him, and it was held by this court that Reynolds' title to

the land had been divested by the attachment proceedings, upon the ground that, in this class of cases, the levy of the attachment gave the court jurisdiction. But the object of such attachment is merely to give a lien upon the property which the courts may enforce; and if a lien already exists, whether by mortgage, statute or contract, the court may proceed to enforce the same precisely as though the property had been seized upon attachment or execution.

It is true there is no statute of Texas specially authorizing a suit against a non-resident to enforce an equitable lien for purchase money, but article 1230 of the Code of Texas, hereinafter cited, contains a general provision for the institution of suits against absent and non-resident defendants, and lays down a method of procedure applicable to all such cases. Obviously this article has no application to suits *in personam*, as was held by the Supreme Court of Texas in *York* v. *State*, 73 Texas, 651; *Kimmarle* v. *Houston & Texas Central Railway*, 76 Texas, 686; *Maddox* v. *Craig*, 80 Texas, 600; and by this court in *Pennoyer* v. *Neff*, 95 U. S. 714, 723. The article must then be restricted to actions *in rem;* but to what class of actions, since none is mentioned specially in the article? We are bound to give it some effect. We cannot treat it as wholly nugatory, and as it is impossible to say that it contemplates a procedure in one class of cases and not in another, we think the only reasonable construction is to hold that it applies to all cases where, under recognized principles of law, suits may be instituted against non-resident defendants. In the case of *Hollingsworth* v. *Barbour*, 4 Pet. 466, relied upon by the plaintiff, a statute of Kentucky authorized suits in chancery against non-residents " where any person or persons, their heirs or assigns, claim land as locator, or by bond or instrument in writing;" and as the plaintiff in the case did not claim as locator, it was held that the court acted without authority, and that the decree was void for want of jurisdiction. Where the statute specifies certain classes of cases which may be brought against non-residents, such specification doubtless operates as a restriction and limitation upon the power of the court; but where, as in article 1230 of the

Texas Code, the power is a general one, we know of no principle upon which we can say that it applies to one class of cases and not to another. Unless we are to hold it to be wholly inoperative, it would seem that suits to foreclose mortgages or other liens were obviously within its contemplation. In any event, this was the construction given to it by the Court of Civil Appeals, and apparently by the Supreme Court of the State, and is obligatory upon this court as a construction of a state statute. *Battle* v. *Carter*, 44 Texas, 485; *Oswald* v. *Kaufmann*, 28 Fed. Rep. 36, a Texas case; *Martin* v. *Pond*, 30 Fed. Rep. 15.

2. We are therefore remitted to the principal question in dispute between these parties, namely, the sufficiency of the notice given to the plaintiff of the McClintic & Proctor suit. In this connection our attention is called to certain articles of the Texas Code, the first one of which, Art. 1228, Sayles' Texas Civil Statutes, provides generally for the service of process by giving five days' notice, exclusive of the day of service and of the return day. In addition to this there are the following sections:

Art. 1230. "Where the defendant is absent from the State, or is a non-resident of the State, the clerk shall, upon the application of any party to the suit, his agent or attorney, address a notice to the defendant requiring him to appear and answer the plaintiff's petition at the time and place of holding of the court, naming such time and place. Its style shall be ' The State of Texas,' and it shall give the date of the filing of the petition, the file number of the suit, the names of all the parties, and the nature of the plaintiff's demand, and shall state that a copy of the plaintiff's petition accompanies the notice. It shall be dated and signed and attested by the clerk, with the seal of the court impressed thereon ; and the date of its issuance shall be noted thereon ; a certified copy of the plaintiff's petition shall accompany the notice. "

Art. 1234. "Where a defendant has been served with such notice he shall be required to appear and answer in the same manner, and under the same penalties as if he had been personally served with a citation within this State."

Art. 1280. ". . . The fifth day of each term of the district court and the third day of each term of the county court are termed appearance days."

Art. 1281. "It shall be the duty of the court on appearance day of each term, or as soon thereafter as may be practicable, to call in their order all cases on the docket which are returnable in such term."

Art. 1340. "Judgments for the foreclosure of mortgages and other liens shall be, that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and (except in judgments against executors, administrators and guardians) that an order of sale shall issue to the sheriff or any constable of the county where such property may be, directing him to seize and sell the same as under execution, in satisfaction of the judgment; and if the property cannot be found, or if the proceeds of such sale be insufficient to satisfy the judgment, then to make the money, or any balance thereof remaining unpaid, out of any other property of the defendant, as in case of ordinary executions."

From these requirements it appears that the time for service of process in the courts of Texas was five days, exclusive of the day of service and return, and that there is no distinction in this particular between defendants living in the town where the court is sitting and defendants living in other States, or even in a foreign country. In short, for aught that appears here, parties may be called from the uttermost parts of the earth to come to Texas and defend suits against them within five days from the day the notice is served upon them. In the case under consideration it is admitted that the defendant was served with notice on December 30, 1890, at Harrisonburg, Rockingham County, Virginia, to appear on January 5, 1891, at Groesbeck, Limestone County, Texas; that it would have required four days of constant travelling to reach Groesbeck, giving the plaintiff but one day, and that a Sunday, to make preparations to comply with the exigencies of the notice. This estimate, too, makes no allowance for accidental delays in transit. It is true that, by articles 1280 and 1281, the case could not have been called for trial or default until the fifth day

of the term, January 9, and that Roller's default was not actually taken and judgment entered until that day. But, as a citizen of Virginia, he was not bound to know the practice of the Texas courts in that particular, and was at liberty, even if he were not compelled, to construe the notice as it read upon its face. Very probably, too, the court which rendered the judgment would have set the same aside, and permitted him to come in and defend; but that would be a matter of discretion — a contingency he was not bound to contemplate. The right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion.

That a man is entitled to some notice before he can be deprived of his liberty or property, is an axiom of the law to which no citation of authority would give additional weight; but upon the question of the length of such notice there is a singular dearth of judicial decision. It is manifest that the requirement of notice would be of no value whatever, unless such notice were reasonable and adequate for the purpose. *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation District*, 111 U. S. 701–712. What shall be deemed a reasonable notice admits of considerable doubt. In the case of a witness subpoena the command of the writ is that the party served shall lay aside all his business and excuses, and make his way to the court with the utmost dispatch, or at least present himself upon the return day of the writ. An ordinary summons, however, to answer the suit of a private individual contemplates that the party served may have other business of equal or greater importance engaging his attention, or may require time for the retainer of counsel and the preparation of his defence.

In 2 Chitty's General Practice, 175, it is said in reference to summary proceedings before justices of the peace: "The time appointed must always allow sufficient opportunity between the service of the summons and the time of appearance, to enable the party to prepare his defence and for his journey; and the justice should in this respect take care to avoid any supposition of improper hurry, or he may incur the censure of the Court of King's Bench, if not be subject to a criminal information.

The precise time will generally depend on distance, and the other circumstances of each particular case. With analogy to other branches of the law, a man should not be required, *omissis omnibus aliis negotiis*, instantly to answer a charge of a supposed offence necessarily less than an indictable misdemeanor, on the same or even the next day, and should be allowed not only ample time to obtain legal advice and assistance, but also to collect his evidence; and even the convenience of witnesses should be considered; and therefore, in general, several days should intervene between the time of summons and hearing. In the superior courts, in general, at least eight days' notice of inquiry and of trial are essential for the preparation of the defence." In vol. 2, page 144, it is said that the ancient practice was that a person residing at a considerable distance from a metropolis should be allowed more time for performing the act than a person within, or near, the metropolis, but that there is now no distinction between an arrest on process in London or Yorkshire, and in each case the defendant must appear or put in bail within eight days after the date of service or arrest. This, considering the small area of the kingdom, and the rapid means of transportation, seems just and reasonable.

While, as before stated, there is but little in the way of judicial authority upon the question, in the statutes of the several States regulating proceedings against absent and non-resident defendants, there is a consensus of opinion, which is entitled to great weight in passing upon the question of the reasonableness of such notice.

In the act of Congress providing for the enforcement of liens upon property as against non-residents, Rev. Stat. § 738, the court is required to make an order fixing a day certain, which shall be served on the absent defendant wherever found, or, if personal service be impracticable, such order shall be published once a week for six consecutive weeks, with a proviso that, if there be no personal service, he shall have one year after final judgment to enter his appearance, and set aside the judgment. The same proviso allowing the court to fix the time of appearance is found in the statutes of Massachusetts, New Hampshire, Pennsylvania, Alabama, Maryland and Virginia.

By the sixth rule of this court, a party moving to dismiss must give a notice of at least three weeks, and where counsel to be notified reside west of the Rocky Mountains, a notice of at least thirty days.

By the Code of Civil Procedure of New York, sec. 440, the judge is required to make an order for publication once a week for six successive weeks, and in addition thereto the plaintiff, on or before the day of the first publication, is bound to mail a copy of the summons, complaint and order for appearance to the non-resident defendant. By sec. 2525, citations from Surrogate's Courts must be served on non-residents at least thirty days before the return day.

By the General Statutes of Vermont, (1894) §§ 1641, 1643, non-resident defendants (served out of the State) are entitled to at least twenty days' notice before the time when they are required to appear.

By the practice in Michigan, the court orders the absent or non-resident defendant to appear in not less than three months, if he be a resident of the State, absent or concealed, and if a resident of some other of the United States or of the British provinces, in not less than four months; and if a resident of any foreign State, in not less than five months from the date of making the order; and if the order be not published for six successive weeks, defendant shall be personally served at least twenty days before the time prescribed for his appearance. 2 Howell's Statutes, §§ 6670, 6671 and 6672.

By the Revised Statutes of Illinois, (1899) chapter 22, § 14, there must be either publication or a personal service upon the non-resident defendant, " not less than thirty days previous to the commencement of the term at which such defendant is required to appear."

By the General Statutes of New Jersey, (1895) Vol. 1, page 405, the chancellor may order the non-resident defendant to appear not less than one nor more than three months from the date of the order; " of which order such notice as the chancellor shall by rule direct shall, within ten days thereafter, be served personally on such defendant," or be published for four weeks. This gives the defendant at least twenty days' personal notice.

By the General Statutes of Arkansas, (1894) §§ 5677, 5678, a non-resident defendant is entitled to a copy of the complaint and the summons warning him to appear and answer " within sixty days after the same shall have been served on him."

By the Code of Georgia, (1895) § 4979, the party obtaining an order for the appearance of a non-resident defendant shall file in the office of the clerk, at least thirty days before the term next after the order for publication, a copy of the newspaper in which said notice is published, which the clerk is required to at once mail to the party named in the order; and, by sec. 4980, the judge is required to determine whether the service has been properly perfected.

By the Revised Statutes of Florida, (1892) § 1413, the clerk must publish the order for the appearance of a non-resident defendant once a week for four consecutive weeks, and also, within twenty days after the making of the order, mail a copy to the defendant, if his residence be shown by the bill or affidavit.

By the Code of Montana, (1895) § 638, publication must be made for four successive weeks, and, where the residence of the defendant is known, the clerk must forthwith deposit a copy of the summons and complaint in the post office, directed to the person to be served at his place of residence. A similar practice also obtains in California.

By the General Statutes of Mississippi, (1892) sec. 3423, publication may be dispensed with, if the summons be served upon the absent party at least ten days before the return day. This is the shortest length of notice to be found in any of the statutes.

By the Code of Oregon, (1892) sec. 57, in case of publication, which must be not less than once a week for six weeks, the court or judge shall also direct a copy of the summons and complaint to be forthwith deposited in the post office, addressed to the defendant, if his place of residence be known; and " in case of personal service out of the State, the summons shall specify the time prescribed in the order for publication."

It may be said in general, with reference to these statutes, that in cases of publication notice is required to be given at

least once a week for from four to eight weeks, and in case of personal service out of the State, no notice for less than twenty days between the service and return day is contemplated in any of the States except Mississippi, where a personal notice of ten days seems to be sufficient. While, of course, these statutes are not obligatory here, they are entitled to consideration as expressive of the general sentiment of legislative bodies upon the question of reasonableness of notice.

Without undertaking to determine what is a reasonable notice to non-residents, we are of opinion, under the circumstances of this case, and considering the distance between the place of service and the place of return, that five days was not a reasonable notice, or due process of law; that the judgment obtained upon such notice was not binding upon the defendant Roller, and constitutes no bar to the prosecution of this action.

*The judgment of the Court of Civil Appeals, affirming the judgment of the District Court of Limestone County, must therefore be reversed, with instructions to remand the case to that court for further proceedings not inconsistent with this opinion.*

THE CHIEF JUSTICE and MR. JUSTICE BREWER dissented.