## BROPHY v. KELLY et al.

(Circuit Court of Appeals, Fifth Circuit. February 10, 1914.)

No. 2463.

1. JUDGMENT (§ 17*)—PROCESS TO SUSTAIN—SUBSTITUTED SERVICE.

Personal service of process on a nonresident of Texas without that state as authorized by a statute of that state will support a judgment foreclosing a vendor's lien on land owned by such nonresident within the state and ordering its seizure and sale, but not awarding any relief against such nonresident personally.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 25–33, 157, 422; Dec. Dig. § 17.*]

2. VENDOR AND PURCHASER (§ 277*)—VENDOR'S LIEN—ENFORCEMENT—VENUE—OBJECTIONS—WAIVER.

In view of Const. Tex. art. 5, § 8, and Rev. St. Tex. 1895, art. 1098, giving the District Court original jurisdiction in suits to enforce liens on land, article 1194, subd. 12, providing that a suit for the foreclosure of a mortgage or other lien may be brought in the county in which the property subject to the lien or a part thereof may be situated, does not deprive the District Courts of jurisdiction of the subject-matter of suits to enforce liens on land situated in other counties, but only gives the defendant a privilege to be sued in the county in which the land is situated, which may be waived and is waived by defaulting or by appearing and consenting to judgment, notwithstanding the omission of any statutory provision authorizing a plea of privilege in such case; this not justifying the inference that no such plea is recognized.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 774, 775; Dec. Dig. § 277.*]

3. VENDOR AND PURCHASER (§ 285*)—LIEN FORECLOSURE—JUDGMENT.

A judgment foreclosing a vendor's lien was not void as to the nonresident owner who defaulted, because the vendor who indorsed the lien notes to plaintiff and was liable thereon voluntarily appeared and consented to the bringing of the suit in a county other than that in which the land was situated and to the entry of judgment, as plaintiff could have taken final judgment against the land without such appearance and consent by dismissing against such vendor, and such appearance and consent therefore did not affect the owner.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 800–807; Dec. Dig. § 285.*]

4. CONSTITUTIONAL LAW (§ 42*)—PERSONS ENTITLED TO RAISE CONSTITUTIONAL QUESTIONS.

Whether Rev. St. Tex. 1895, art. 1230 et seq., providing for service of process on nonresidents and that a defendant so served shall be required to appear and answer in the same manner as if he had been personally served within the state in connection with article 1263, providing that, where a citation has been personally served at least ten days before the first day of the term at which it is returnable, defendant's answer shall be filed on or before the second day of the return term, denies due process of law to nonresidents personally served outside the state because of the possibility that they might have only 12 days in which to appear and answer, will not be determined at the instance of a nonresident defendant who had ample time in which to appear and answer.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. § 42.*]

5. VENDOR AND PURCHASER (§ 287*)—FORECLOSURE OF LIEN—SALE—VALIDITY.

At a sale under a judgment foreclosing a vendor's lien on property worth $35,000 and subject to a prior lien of $9,000 or $10,000, plaintiff,

---

who was a transferee of the lien notes, was prepared to bid $3,000, the approximate amount of the judgment, but was informed by the vendor that he would pay plaintiff the difference between his bid and the judgment; plaintiff's interest in bidding being thereby taken away. Payment of the prior lien had been assumed by such vendor in the sale to the vendee, and another purchase-money note for $15,000 given by the vendee had been postponed by the vendor's agreement to the lien of plaintiff's note, and, though one present at the sale who made inquiry was told of such liens by plaintiff, the vendor, or the sheriff in their presence and with their acquiescence, these facts were not explained to him, and, unexplained, the liens were such as to destroy his interest in the property. The land was sold to the original vendor for $676. *Held*, that the sale was collusive and fraudulent as to the vendee and should be set aside and the sheriff's deed declared null and void because of such fraud and collusion.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 810–814; Dec. Dig. § 287.*]

Appeal from the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Suit by Reuben C. Brophy against John C. Kelly and others. From a decree dismissing the bill of complaint, plaintiff appeals. Reversed and remanded, with directions.

This is an appeal from a decree of the District Court for the Southern District of Texas in equity, dismissing appellant's (plaintiff's) bill of complaint after a hearing upon the merits. The decree also dismissed the cross-bill of the appellee John C. Kelly, who was one of the defendants and a cross-complainant in the court below; but no cross-appeal has been taken from that part of the decree.

The original bill was filed, so far as its purposes are here material, for the purpose of setting aside and vacating, as fraudulent and void, a judgment order of sale and a sale thereunder of a state court, which was asserted by the appellant to be a cloud on his title to certain lands in Hidalgo county, Tex. The judgment was obtained by one of the defendants, L. W. Campbell, in a suit instituted by him as plaintiff in the district court of Dallas county, Tex., against the appellant and the appellee John C. Kelly, as defendants. The purpose of this suit was to recover on a note executed by the appellant to the appellee Kelly for $2,525.85, and indorsed by Kelly to the plaintiff, in that suit, Campbell, and to enforce a vendor's lien upon the land for a part of the purchase money of which the note was given. There was a default taken against the appellant, and on the 14th day of February, 1911, the default was made final by a judgment in the district court of Dallas county. The final judgment was for the foreclosure of the vendor's lien on the land, for part of the purchase money of which the note sued on was given, and, as well, a personal judgment against the defendant John C. Kelly, as indorser on the note. There was no personal judgment taken against the appellant Brophy. The appellant Brophy, at the time of the beginning of that suit and of the rendition of the judgment therein, was a resident of Illinois and a nonresident of Texas. He was served with the notice of the suit personally in the state of Illinois in pursuance of articles 1230 to 1234, inclusive, of the Revised Statutes of Texas, on the 9th day of January, 1911, and by the terms of the citation was required to appear and answer upon the first Monday in February, 1911. Appellant made no appearance or answer. At the time of the bringing of the suit appellant's codefendant Kelly was a resident of Texas. Citation was issued to him but not served upon him. On February 14, 1911, Kelly entered a voluntary appearance in the district court of Dallas county in the cause and consented to a judgment against him, as prayed for in plaintiff's petition, and personal judgment was entered against him on that day. On March 10, 1911, an order of sale, founded on the judgment, was issued from the clerk's office, directing the sheriff of Hidalgo county to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

seize and sell the land to satisfy the vendor's lien. The sheriff thereupon duly advertised the land for sale, and sold it at public outcry at the county seat of Hidalgo county on the first Tuesday of May, 1911, pursuant to the advertisement, and returned the order for the seizure and sale to the district court of Dallas county, having executed a deed to the purchaser. The purchaser was the defendant, John C. Kelly, and the amount realized therefor was $676.

The purpose of the bill was to have (1) the judgment declared void and removed as a cloud on plaintiff's title to the land, or (2) to have the sale made by the sheriff under it set aside and declared void, because of alleged collusion and fraud between the execution creditor Campbell and the purchaser Kelly, who was one of the defendants.

Noah Allen, of San Antonio, Tex., and E. F. Thompson, of Chicago, Ill., for appellant.

Coke K. Burns, of Houston, Tex. (Andrews, Ball & Streetman, of Houston, Tex., on the brief), for appellee John C. Kelly.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). 1. The bill assails the judgment because, as it alleges, the district court of Dallas county did not acquire jurisdiction of the defendant Brophy or of his land; he being a nonresident of Texas and personally served in the state of his residence, Illinois, and the land involved not being situated wholly or partly in Dallas county, in which county the suit was brought. As to defendant Brophy, it is contended that the judgment was void, whether the action be one in personam or one in rem. It is also alleged that the defendant Brophy was deprived of due process of law by being deprived of his land under the judgment, because the Texas statute, under which service was obtained, failed to afford reasonable time for appearance and answer by a nonresident defendant when personally served beyond the limits of the state. The statute provided that the citation should be served ten days before the return term, and answer was required to be made by the defendant on or before the second day of the return term, and before the call of the appearance docket on said second day. Revised Statutes Texas, art. 1263.

[1] It is not contended by the appellee that service by personal citation upon a nonresident defendant under article 1230 of the Revised Statutes of Texas, outside the limits of the state, would be a sufficient predicate for a personal judgment against him. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. No personal judgment was rendered against defendant Brophy in that case, and the only question is whether such service is effective to sustain a judgment foreclosing a vendor's lien; the land being situated within the jurisdiction of the court.

Constructive service may be a sufficient foundation for a judgment or decree in rem. So personal service upon a nonresident defendant, when he is out of the state, in which the suit against him is pending, may avail to support a judgment in that state, if its effect is limited to property of his within the jurisdiction of the court. This is as true of actual service upon a nonresident when out of the state of the forum, as it is of constructive service upon a nonresident. A suit may be one in rem either by virtue of its purpose being to enforce an existing lien

or foreclose an existing mortgage on property of the nonresident defendant, situated within the state of the forum, or because of the creation in the suit itself by attachment or other process of a legal lien on the property of the nonresident defendant found within the jurisdiction of the court.

In the case of Roller v. Holly, 176 U. S. 398–405, 20 Sup. Ct. 410, 412 (44 L. Ed. 520) the Supreme Court said:

"The substance of these cases is that if the plaintiff be in possession, or have a lien upon land within a certain state, he may institute proceedings against nonresidents to foreclose such lien or to remove a cloud from his title to the land, and may call them in by personal service outside of the jurisdiction of the court, or by publication, if this method be sanctioned by the local law. In suits for the foreclosure of a mortgage or other lien upon such property, no preliminary seizure is necessary to give the court jurisdiction. The cases in which it has been held that a seizure or its equivalent, an attachment or execution upon the property, is necessary to give jurisdiction are those where a general creditor seeks to establish and foreclose a lien thereby acquired."

That the suit in the district court of Dallas county and the judgment rendered therein are to be construed, so far as they affected the defendant Brophy, as being in rem only, is apparent from the fact that no relief against Brophy was obtained, except an order for the seizure and sale of his land. That service by personal citation upon a nonresident defendant, in the state of his residence, is sufficient to support a judgment in rem, foreclosing a lien on his land situated within the state of the forum and within the jurisdiction of the court, is the holding of the case of Roller v. Holly, supra. That case also holds that article 1230, Texas Revised Statutes, the one relied on by appellee in this case, applies to suits for the foreclosure of liens or mortgages on lands, as construed by the courts of Texas, a construction adopted by the Supreme Court in that case.

The appellant, however, contends: (1) That the land being in a county different from that in which the suit was brought and the judgment obtained, and the Texas statute requiring suits for foreclosure of liens on land to be brought in the county where the land was located, partly or wholly (Revised Statutes Texas, art. 1194, subd. 12), the district court of Dallas county had no jurisdiction of the rem, and, having no jurisdiction of the person of the defendant Brophy, was without jurisdiction altogether; and (2) that article 1230, Texas Revised Statutes, providing for service on nonresidents, allowing the citation to be returnable at a term to be held within ten days after service, the Texas law requiring the defendant to answer on or before the second day of the term makes it possible that a nonresident defendant have but 12 days in which to appear and answer the citation, which might be an unreasonably short time, depending upon the distance the residence of the defendant is from the place of trial, and that the statute, for this reason, deprives nonresident defendants of due process, and is violative of the fourteenth article of amendment to the federal Constitution for that reason.

[2] 2. The district court of Dallas county is by the Constitution and laws of Texas vested with general original jurisdiction in all suits for the enforcement of liens on lands (Constitution of State of Texas, art.

5, § 8; Revised Statutes of Texas 1895, art. 1098), where the amount in controversy exceeds the sum of $500. Article 1194, subd. 12, Texas Revised Statutes, provides that a suit for the foreclosure of a mortgage or other lien may be brought in the county in which the property subject to such lien or a portion thereof may be situated. Is the effect of the latter statute to deprive the district courts of jurisdiction of the subject-matter of suits to enforce liens on lands situated in counties other than that of the forum, or merely to provide for the venue, giving the defendant a privilege to be sued only in the county of his residence, or that in which is situated property against which a lien is sought to be enforced, a privilege which he may insist on or waive, as he sees fit, and which he waives by permitting a default to go against him? That the latter is the correct rule is apparent from the Texas cases we quote from.

In De La Vega v. League, 64 Tex. 205–215, the Supreme Court of Texas said, with reference to subdivision 14 of the same section, which limits the venue in actions for the recovery of lands, to remove incumbrances, to quiet title, and to prevent waste, to the county in which the land or a part thereof lies:

"Our statutes in force at the time the reconvention was filed provided that suits for the recovery of land should be brought in the county where the land or a part thereof is situated. This is one of the exceptions to the general rule requiring suits to be brought in the county of the defendant's residence. This requirement is not a matter that affects the jurisdiction of the district courts over the subject-matter of controversies about the title or possession of lands. Every district court in the state has cognizance of such suits; the requirement as to the county in which the suit may be brought is a mere personal privilege granted to the parties, which may be waived like any other privilege of this character."

In the case of Dittman v. Iselt, 52 S. W. 96, the Texas Court of Civil Appeals said:

"It is well settled that the requirement that suits for the recovery of lands should be brought in the county where the land, or a part thereof, may be situated, is not a matter that affects the jurisdiction of district courts over the subject-matter of controversies about the title or possession of lands. The requirement is one of personal privilege merely, and, when the parties were once in court, any matter arising out of the subject-matter of the suit could be litigated."

In the case of Wolf v. Sahm, 55 Tex. Civ. App. 569, 120 S. W. 1114–1116, the same court said:

"It is true that while article 1194 of the Revised Statutes of 1895 prescribes that suits concerning lands shall be brought in the counties where the lands are situated, still district courts have the power to try such suits regardless of the county in which the land is located, and the statute referred to merely secured to a defendant a personal privilege to be sued in a particular county. It is also true that the general rule is that the privilege referred to is waived when a defendant files a plea to the merits before asserting his privilege to be sued in another county."

In the case of Houston Oil Co. v. Bayne (Tex. Civ. App.) 141 S. W. 544, the same court reapplied the principle decided in the case of De La Vega v. League, supra, to a case in which a judgment was entered against nonappearing unknown heirs, upon constructive service by posting and publication. The court said:

"We are of the opinion, however, that the general rule announced by the authorities, and above stated, applies to this case. The presumption is that the court obeyed the plain command of the statute, and appointed an attorney ad litem to represent the defendants, and they are bound by his waiver of objections to the venue."

There is no reason for the drawing of a distinction between subdivision 14 and subdivision 12 of article 1194, in this respect. Each relates to the venue in suits concerning lands, and fixes the venue in the county where the lands are situated. However, in the case of Cavanaugh v. Peterson, 47 Tex. 206, the Supreme Court of Texas said:

"The statute provides for a mortgage on land to be foreclosed in the county where the land is situated. It does not follow, from that, that a judgment of foreclosure would be void, if it was foreclosed in another county; the district court having general jurisdiction of the subject-matter—the debt, and the mortgage to secure it. That judgment, being rendered in Harris county, was binding, and, not being appealed from or set aside, was conclusive, as between the parties to it, to the full extent of what was decreed."

The same principle has been announced by the Texas courts in the cases of Ryan v. Jackson, 11 Tex. 400; Morris v. Runnells, 12 Tex. 175; Bonner v. Hearne, 75 Tex. 247, 12 S. W. 38; Walker v. Stroud (Tex. Sup.) 6 S. W. 206; and Fairbanks v. Blum, 2 Tex. Civ. App. 479, 21 S. W. 1009.

Appellant contends that article 1903, Texas Revised Civil Statutes, does not apply to nonresident defendants. It, however, applies only to a plea of privilege based upon the residence of a defendant in a county of the state other than that in which he is sued, and does not attempt to prescribe the form of such a plea, where it is based upon the ownership of lands, which are affected by a suit, which is pending in a county, other than that in which the lands are located. It cannot be inferred, from the absence of legislation prescribing the form of such a plea of privilege, that no such plea in such cases is recognized in Texas, especially in view of the express authorities cited, which sustain the right to file it in cases of like character. Where the basis of the privilege is the locality of the land, about which the suit relates, the place of residence of the defendant, whether within or without the state, becomes immaterial.

We think the fact that the land involved in the suit in Dallas county was in Hidalgo county was a matter of affirmative defense by the defendants in that suit, which might be waived, and which was waived by the defendant Brophy by permitting a default to be taken against him, and by the defendant Kelly by entering a voluntary appearance and consenting to the entry of the judgment in that cause.

[3] It is contended that Kelly collusively consented that the suit might be brought in Dallas County. It is apparent that an agreement on Kelly's part with Campbell, the plaintiff in the suit, could not have prevented Kelly's codefendant Brophy from pleading his privilege to be sued only in the county where the land was located. Brophy was deprived of the opportunity of setting up this defense, because he defaulted, and not because of Kelly's agreement with plaintiff. Kelly was responsible as indorser on the note to the holder of it, and had a legitimate interest in seeing that it was paid by the maker, and if his

interest, in this respect, was subserved by consenting to the jurisdiction of the Dallas county court over him, his codefendant had no ground of complaint. Nor was he entitled to complain of Kelly's act in appearing voluntarily at the return term, and consenting to the judgment, for the same reason. However, the plaintiff Campbell could have taken final judgment against Brophy's land at the return term, in the absence of Kelly's appearance and consent by dismissing against Kelly. So that Kelly's appearance and consent only had the effect of enabling the plaintiff Campbell to obtain a judgment at that term against Kelly as well as against Brophy's land. This was not a matter in which Brophy had an interest or of which he was entitled to complain.

[4] 3. It is also contended that article 1230, Texas Revised Statutes, when considered in connection with article 1263, fails to furnish nonresident defendants, personally served beyond the limits of the state of Texas, due process of law, in that the period between the service of personal citation and the time required of the defendant to appear and answer may be unreasonably short, if the citation is served within the nearest day possible to the return term. The period would then be 12 days. The appellant relies upon the case of Roller v. Holly, 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520. In that case the Supreme Court held that a nonresident defendant, who was called upon to answer a suit pending in Texas, while he himself was in Virginia, within 5 days of date of service of citation, was not furnished due process of law, and was entitled to have a default judgment rendered on such service set aside for that reason. It is quite clear from the opinion of the court that an interval of 20 days between service and return day would not have been held to be unreasonable. In this case, the appellant was served with the citation January 9, 1911, in Elgin, Ill., and was not required to appear or answer until the day succeeding the first Monday in February. This was in excess of 20 days. The period between service and return day for answer, under the Texas statutes, might have been as short as 12 days. The contention is that as to some nonresident defendants such an interval might be too short to afford due process, and that, if the statute permits of such a contingency, it must be declared invalid, even though appellant had ample time after service to plead in the case in which he was defendant.

We think the case of Tyler v. Judges of Court of Registration, 179 U. S. 405, at page 409, 21 Sup. Ct. 206, at page 208 (45 L. Ed. 252), answers this contention adversely to the appellant, deciding that a federal court will not strike down a state statute as unconstitutional because not affording due process of law in the matter of notice at the instance of a defendant who concededly had ample notice of the pendency of the suit against him. In that case the Supreme Court said:

"In the case under consideration the plaintiff in error is the owner of a lot adjoining the one which is sought to be registered, and the only question in dispute between them relates to the location of the boundary line. In his petition he does not set forth that he made himself a party to the proceedings before the court of registration, and his name does not even appear in the list of those who are required to be notified, or elsewhere in the proceedings before the court. In the assignment of error he complains only of the unconstitutionality of the statute, in that it deprives persons of property without due process of law. In his brief his first objection to the validity of the act is

that the registration, which deprives all persons, except the registered owner, of interest in the land, is obtained as against residents and known persons only by posting notices in a conspicuous place on the land and by registered letters, and as against nonresidents and unknown persons by publication in a newspaper; and that the rights of the parties may be foreclosed without actual notice to them in either case, and without actual knowledge of the proceedings. His second objection to the validity of the act is that the registration of dealings with the land after the original registration would, in certain cases, have the effect of depriving the registered owners of their property without due process of law. His objections throughout assume that he has actual knowledge of the proceedings, and may make himself a party to them and litigate the only question, namely, of boundaries, before the court of registration. In other words, he is not affected by the provisions of the act of which he complains, since he has the requisite notice. Other persons, whether residents or nonresidents, whose rights might be injuriously affected by the decision, might lawfully complain of the unconstitutionality of an act which would deprive them of their property without notice; but it is difficult to see how the petitioner would be affected by it. * * * It may well have been thought that, to avoid the necessity and expense of appearing before an unconstitutional court and defending his rights there, he had sufficient interest to attack the law, which lay at the foundation of its proposed action; but to give him a status in this court he is bound under his petition to show, either that he has been, or is likely to be, deprived of his property without due process of law, in violation of the fourteenth amendment; and, as no such showing has been made, we cannot assume to decide the general question whether the commonwealth has established a court whose jurisdiction may, as to some other person, amount to a deprivation of property."

Upon the authority of this case, we decline, at the instance of appellant, who had ample and timely notice of the pendency of the Dallas county suit, to decide the general question as to whether article 1230 is a violation of the fourteenth amendment, because of its possible failure to furnish another person, in another case, reasonable notice and opportunity to appear and defend.

This results in a denial to appellant of the relief prayed for by him, so far as it relates to the judgment of the district court of Dallas county. We reach this conclusion with less reluctance, since the only defense to the action on the note that we understand from the record the appellant would or could interpose, if afforded an opportunity, is that it was transferred to plaintiff by the payee and endorser Kelly, in violation of his agreement with appellant, an agreement which was found by the district judge not to have been made, in which finding we concur.

[5] We come then to the other branch of relief prayed for by appellant, namely, the setting aside of the sale made under the judgment.

It is conceded by the appellant that the sale was made in pursuance of an order of sale, issuing upon the judgment, and was regularly advertised, and was conducted by the sheriff of Hidalgo county, as a judicial sale at public outcry. The appellant claims that the sale was fraudulent as to him, because there was a collusive agreement between the plaintiff in the judgment, Campbell, and the purchaser, Kelly, as to the bidding; because of the announcement at the sale that there were certain liens on the property, made either by the sheriff or by Campbell or Kelly, no explanation having been given that these liens were subsequent to that under which the sale was had; and because the property was sold for a grossly inadequate price.

The evidence showed that Campbell, the plaintiff in execution, went to Edinburgh, where the sale was to occur, to look after his interest at the sale; that, at Kelly's request, the sale was continued to a later hour, to enable Kelly to reach Edinburgh and bid on the land; that Kelly came to Edinburgh prepared to bid $3,000, which was the approximate amount due on the judgment for the land; that before the bidding commenced Kelly told Campbell that he would pay Campbell the difference between the amount due on the note and judgment and what he (Kelly) might bid in the land for; that Campbell said what he wanted was his money and not the land. This is Kelly's own testimony. The land was knocked down to Kelly after Campbell had stopped bidding, there being no bidders other than Kelly and Campbell, for $676. That amount was insufficient to pay the judgment in favor of Campbell to satisfy which the land was sold. Campbell, however, was protected as to the unpaid balance by Kelly's agreement to pay it to him, though the property sold for less. Kelly did pay Campbell the difference between what was due on the judgment, and the amount of his bid and took a transfer of the note, on which the judgment was based, from Campbell, crediting it with the amount of his bid. A sheriff's deed was made on the date of the sale to Kelly. It seems clear that Campbell's interest in bidding was taken away by his foreknowledge that he would get his money from Kelly, without requiring Kelly to bid the amount due on the judgment, as he was prepared to do, if necessary. Instead of the judgment being satisfied in full by the land sold, as it would have been in the absence of such an understanding, it was satisfied only to the extent of $676, leaving to Campbell or to his transferee, Kelly, the power to collect the balance from the appellant Brophy by execution against his other property.

Again, it is quite clear that an announcement was made at the sale by either Kelly or Campbell or the sheriff in their presence and with their acquiescence that there were liens on the land to a person, who was present at the sale, and displayed enough interest in the sale to make the inquiry. There was a prior lien in favor of the Bedell Moore estate of about $9,000, but the payment of this had been assumed by Kelly, in his trade with Brophy. There was another purchase-money note for $15,000 of Brophy's, held by Kelly or his transferee; but the lien of this note was postponed by Kelly's agreement with Campbell to the lien of the note, which was the basis of the judgment under which the sale was made. No explanation of the status of the liens was vouchsafed the inquirer. The amount of the liens was such as to destroy his interest in the property, if his statement is to be credited. He made no bid at the sale, thus leaving the competition altogether between Campbell and Kelly. The partial information furnished the possible bidder was misleading, and calculated to induce a withdrawal of interest. It was made by or in the presence and with the apparent acquiesence of Campbell and Kelly. We do not think they are in a position to say that appellant has not shown the solvency or capacity of the inquirer to purchase, after having discouraged his bid.

The property sold for $676, subject to a lien of $9,000 or $10,000. The record shows it to have been worth $35,000 or more.

In view of the facts attending the sale, as stated, and the inadequate

price realized for the property sold, we have reached the conclusion that the sale was collusive and fraudulent as to appellant Brophy and should be set aside, and the sheriff's deed declared to be null and void, leaving the property to be resold under another order of sale to be issued upon the judgment. The following authorities support this conclusion: Byers v. Surget, 60 U. S. 303, 15 L. Ed. 670, and Graffam v. Burgess, 117 U. S. 180, 6 Sup. Ct. 686, 29 L. Ed. 839.

The equities as between the parties will also be conserved by this course. If the sale is permitted to stand, the appellant Brophy will have lost the land he purchased from Kelly, without opportunity to redeem it from the sale. For this land, he paid Kelly $5,200 in cash and executed two notes, one for $2,525 and one for $15,000. The smaller note is still outstanding against him, except for the credit of $676, the amount realized from the land at the sale. The second note for $15,000 is also still outstanding against him and in the hands of a possible innocent holder for value, with no notice of any equities between Kelly and appellant. Against these obligations, Brophy has nothing. The inequity of this situation needs no enlargement.

The decree of the District Court is reversed, and the cause remanded to that court, with directions to there enter a decree, setting aside the sale of the land by the sheriff of Hildago county to the appellee Kelly, and declaring the sheriff's deed to Kelly null and void, but without prejudice to the right of the appellee Campbell to sue out another order of sale on the judgment in the district court of Dallas county, and in pursuance of it to readvertise and resell the land, if he is so advised. The costs in this court and in the court below to be taxed against the appellees and defendants.