162 F.3d 63
 1999 A.M.C. 658
 Emre E. DLUHOS, Plaintiff-Appellant,
v.
The FLOATING AND ABANDONED VESSEL, KNOWN AS "NEW YORK ", Ex
Official Number 127168, now in the Erie Canal System located
at Waterford, New York, near Troy/Albany, New York,
abandoned in excess of four years, etc., and Sovereign State
of New York, Defendants-Appellees,
Friends of Catawissa, c/o Richard Anderson, Claimant.
 Docket No. 97-9353
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 12, 1998.
Decided Nov. 20, 1998.
 
 Emre E. Dluhos, Belleville, NJ, Pro Se.
 Julie S. Mereson, Assistant Attorney General, Albany, N.Y. (Dennis C. Vacco, Attorney General of the State of New York, Peter G. Crary, Assistant Attorney General, of counsel), for Defendant-Appellee State of New York.
 Before: CALABRESI, CABRANES, and STRAUB, Circuit Judges.
 STRAUB, Circuit Judge:
 
 
 1
 Emre E. Dluhos, pro se, appeals from a judgment of the United States District Court for the Northern District of New York (David R. Homer, M.J.) dismissing his complaint for lack of in rem jurisdiction and denying his motion for leave to amend the complaint. After considering the parties' arguments, we hold that the trial court properly dismissed Mr. Dluhos's in rem admiralty claim for lack of jurisdiction. Specifically, Rule D of the Supplemental Rules for Certain Admiralty Claims requires that in order to maintain an in rem admiralty action against a vessel, the vessel generally must be arrested. Because Mr. Dluhos did not post the bond required by the trial court, the court did not arrest the vessel and therefore lacked jurisdiction over the vessel in rem.
 
 
 2
 We also hold that Mr. Dluhos should not be permitted to amend his complaint to attempt to bring his claim in diversity because any amendment would be futile. While the magistrate judge so concluded, we do not agree with the bases for his decision. In reaching our conclusion, we rely on two distinct grounds. First, it is a well-settled proposition that actions brought against vessels in rem sound exclusively in admiralty. Because Mr. Dluhos's claim is at its core an in rem action against a vessel, it may not proceed in diversity. Second, even if the claim could permissibly be brought in diversity, the substantive law of admiralty must still apply to any diversity action brought by Mr. Dluhos, and admiralty law carries with it the legal fiction that a vessel may never be abandoned. Through the application of this fiction, because the vessel to which Mr. Dluhos seeks title would never have been abandoned as a matter of law, it would therefore be unavailable to him as the vessel's "finder."
 
 
 3
 Accordingly, we affirm both the dismissal of Mr. Dluhos's complaint and the denial of his motion for leave to amend.
 
 BACKGROUND
 
 4
 In 1896 the New York, a 158 foot long iron steam tugboat, was built by the Pennsylvania-Reading Railroad.[1] The vessel, then called the Catawissa,[2] began its one hundred year career hauling coal to and from various ports between Boston, Massachusetts, and Charleston, South Carolina. In the 1940s, after the end of the vessel's useful life as a tug, a Baltimore salvage company saved her from the scrap heap, employing her in the less glamorous occupation of steam cleaning sludge from the insides of freighters docked in New York Harbor. In 1992, the Sandusky Maritime History Association, a group of steamship enthusiasts from Sandusky, Ohio, bought the ship, made plans to turn her into a museum, and began towing her through the Erie Canal towards Lake Erie and the Sandusky Peninsula. Passing Waterford, New York, the vessel became trapped in the Erie Canal and subsequently began to leak oil. Overwhelmed by the cost of removing the ship and paying for the ensuing cleanup, the Sandusky Maritime History Association dissolved, leaving the vessel in the Erie Canal. As a result, state and federal authorities bore the half million dollar cost of the oil-spill cleanup. The New York remained floating and untended in roughly the same location until the inception of this lawsuit.[3]
 
 
 5
 Mr. Dluhos is a retired ship engineer living in New Jersey, who by his own estimation has over forty years' seagoing experience as a chief engineer. At some point before March of 1996, Mr. Dluhos boarded the vessel and posted notices on it claiming ownership. On March 26, 1996, he filed a complaint in the Northern District of New York, alleging jurisdiction both in admiralty in rem and in diversity, seeking title to the vessel under the law of finds. Specifically, he claimed that the New York had been abandoned and that, as its "finder," he acquired ownership of the vessel. Although the vessel was the only named defendant in the action, Mr. Dluhos also named the State of New York as an indispensable party under Rule 19(a) of the Federal Rules of Civil Procedure. In its answer, the State asserted numerous defenses, including that the complaint failed to establish an in rem admiralty action and that the court lacked jurisdiction over the vessel, the subject matter of the litigation. In the course of the fourteen months that followed, Mr. Dluhos amended his complaint twice, both times asserting jurisdiction only in admiralty in rem.[4]
 
 
 6
 In October 1996, Mr. Dluhos sought to effect the arrest of the vessel and to be appointed the vessel's custodian during the pendency of the action. As a condition of arrest and appointment of Mr. Dluhos as custodian, the trial court required the posting of a $5,000 bond to cover the cost of insuring the vessel. Mr. Dluhos moved unsuccessfully to have the bond waived. In April 1997, because Mr. Dluhos had not posted the bond, the magistrate judge denied the motion to arrest the vessel. That June, the State of New York filed a motion to dismiss the complaint for lack of in rem jurisdiction because the res had not been arrested. Responding to the State's motion, Mr. Dluhos sought to amend his complaint a third time to bring his claim in diversity. In a published opinion, the magistrate judge granted the state's motion to dismiss and denied Mr. Dluhos's third motion to amend. See Dluhos v. Floating and Abandoned Vessel, Known as "New York," 979 F.Supp. 138 (N.D.N.Y.1997).
 
 
 7
 Analyzing Mr. Dluhos's most recent complaint, which alleged in rem admiralty jurisdiction only, the magistrate judge held that "before a court may exercise jurisdiction in an in rem admiralty action, the defendant vessel must be arrested within the court's territorial jurisdiction." Id. at 140. Because the vessel was never arrested, the magistrate judge determined that the court lacked jurisdiction over Mr. Dluhos's claim for title to the vessel and therefore dismissed the complaint. Id. Turning to the motion to amend the complaint, the magistrate judge first found that the New York was not a "dead ship" and that it therefore remained a vessel for purposes of admiralty jurisdiction. Id. The magistrate went on to hold that Mr. Dluhos's "assertion of diversity jurisdiction cannot succeed because his entire claim of title to the vessel is based on the law of finds, a concept grounded in admiralty." Id. at 141. Accordingly the court denied the motion to amend the complaint because any amendment would be futile. Id.
 
 
 8
 Early in the litigation, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties consented to have the magistrate judge conduct all further proceedings in the matter including any order of final judgment, waiving any appeal to a District Judge. Their appeal therefore lies with us, and for the reasons that follow, we affirm.DISCUSSION
 
 I. Motion To Dismiss
 
 9
 We must first determine whether the trial court properly granted New York State's motion to dismiss for failure to arrest the res. The magistrate judge based his decision on the complaint supplemented by the undisputed fact that the vessel was not arrested. Under those circumstances, we review de novo a dismissal for lack of in rem jurisdiction. See United States v. One 1987 Mercedes Benz Roadster 560 SEC, 2 F.3d 241, 243 (7th Cir.1993). As explained below, we find no error in the magistrate judge's dismissal of the complaint and therefore affirm that portion of his ruling.
 
 
 10
 The magistrate judge was correct to look only to the allegations in Mr. Dluhos's most recent complaint as " '[i]t is well established that an amended complaint ordinarily supercedes the original, and renders it of no legal effect.' " Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994) (quoting International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir.1977), cert. denied, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978)). In the most recent complaint, Mr. Dluhos pleads only an admiralty action in rem, seeking to acquire title to the vessel New York through admiralty's law of finds. The Supplemental Rules for Certain Admiralty and Maritime Claims explicitly provide for such an action--a petitory action against a vessel--in Rule D. The Rule explains in pertinent part that: "In all actions ... to try title maintainable according to the course of the admiralty practice with respect to a vessel ... the process shall be by a warrant of arrest of the vessel...." Fed.R.Civ.P. Supp. R. D.
 
 
 11
 A plain reading of the text of the rule makes clear that a warrant of arrest of the vessel must issue for the trial court to establish jurisdiction over the res. Id. ("[T]he process shall be by a warrant of arrest of the vessel ....") (emphasis added). In this way, the rule complies with historical admiralty practice, which requires a vessel's arrest in order to maintain an in rem action against it. See Goodman v.1973 26 Foot Trojan Vessel, 859 F.2d 71, 74 (8th Cir.1988) (affirming dismissal of an action under Supplemental Admiralty Rule C because even though the claimant requested a warrant of arrest, "no warrant was issued, and the boat was never arrested, deficiencies in procedure fatal to [the] in rem action"); Alyeska Pipeline Serv. Co. v. Vessel Bay Ridge, 703 F.2d 381, 384 (9th Cir.1983) ("In absence of an arrest, no decree in rem can be rendered against the res. "); Burns Bros. v. Long Island R. Co., 176 F.2d 950 (2d Cir.1949) (per curiam) (holding under the antecedent to the current admiralty rules that because "there has been no arrest of the vessel ..., jurisdiction to enter a decree in rem is lacking").
 
 
 12
 Before issuing a warrant for arrest of a vessel, a court may require the posting of a bond by a claimant. Fed.R.Civ.P. Supp. R. E(4)(e) ("These rules do not alter the provisions of Title 28, U.S.C., § 1921, as amended, relative to the expenses of seizing and keeping property attached or arrested and to the requirement of deposits to cover such expenses."). Section 1921(a)(1)(E) explicitly provides that "The United States marshals or deputy marshals shall routinely collect, and a court may tax as costs, fees for ... [t]he keeping of attached property (including boats, vessels, or other property attached or libeled) [and] actual expenses incurred such as ... insurance...." 28 U.S.C. § 1921(a)(1)(E) (1994). Such fees are typically collected in advance in the form of a deposit. See 28 U.S.C. § 1921(a)(2) (1994). Under this statutory scheme, the fee required by the magistrate judge to cover the cost of insuring the vessel during the pendency of the litigation was entirely permissible, especially in light of the deteriorating condition of the vessel alleged by Mr. Dluhos. Because Mr. Dluhos did not post the bond reasonably required by the trial court, the court properly declined to arrest the vessel and therefore Mr. Dluhos could not maintain an in rem action against it.
 
 
 13
 In addition, we note that Supplemental Admiralty Rule E(4)(b) does not excuse Rule D's arrest requirement; rather it merely informs its application. Rule E(4)(b) provides that:If the character or situation of the property is such that the taking of actual possession is impracticable, the marshal or other person executing the process shall affix a copy thereof to the property in a conspicuous place and leave a copy of the complaint and process with the person having possession or the person's agent.
 
 
 14
 Fed.R.Civ.P. Supp. R. E(4)(b) (emphasis added). The rule makes clear that impracticability excuses only the "taking of actual possession" of the res, not arrest itself. That is, in order to maintain an in rem action against a res where taking of actual possession is impracticable, a warrant of arrest must still issue from the court, but the possession of the res after the arrest may be constructive as opposed to actual. Cf. United States v. James Daniel Good Real Property, 510 U.S. 43, 57-58, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (citing Supplemental Admiralty Rule E(4)(b) as a rule that "permit[s] process to be executed on real property without physical seizure" so long as the court establishes constructive control of the res ). In this case, the dismissal of the action arises only from the failure to arrest the vessel, not from any failure to take actual possession of the vessel, and the bond required by the magistrate judge to pay insurance costs was appropriate regardless of whether the court actually planned to take possession of the New York. Moreover, it is clear from the record in this case that taking of actual possession of the vessel would not have been impracticable as the vessel was intact, afloat, and capable of being boarded.
 
 
 15
 Likewise, although at least two of our sister Circuits have indicated that the arrest requirement may be excused through an affirmative waiver by all parties, see, e.g., United States v. Republic Marine, Inc., 829 F.2d 1399, 1402 (7th Cir.1987); Cactus Pipe & Supply Co., Inc. v. M/V MONTMARTRE, 756 F.2d 1103, 1107 (5th Cir.1985), this case does not provide us with an opportunity to examine such a rule. The State has maintained consistently since its answer to Mr. Dluhos's original complaint that the trial court lacked jurisdiction to entertain this action. Moreover, it brought the motion to dismiss currently before us promptly upon the magistrate judge's denial of Mr. Dluhos's motion to arrest the vessel. Thus, by no stretch of the imagination has the State consented to jurisdiction in this matter.
 
 
 16
 Accordingly no exception requires us to tack from the course charted by Rule D's arrest requirement, and accordingly we affirm the magistrate judge's dismissal of Mr. Dluhos's action for lack of in rem jurisdiction.
 
 II. Motion To Amend
 
 17
 Mr. Dluhos also appeals the magistrate judge's denial of his motion to amend the complaint to bring his claim in diversity. On that issue, the trial court correctly determined that any amendment to Mr. Dluhos's complaint would be futile because his cause of action is exclusive to admiralty and therefore not cognizable in diversity. As we discuss in greater detail below, however, the precise analysis the trial court used to reach that result was not sound.
 
 
 18
 Generally leave to amend should be "freely given," Fed.R.Civ.P. 15(a), and a pro se litigant in particular "should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir.1984). Nonetheless, a motion to amend should be denied if there is an "apparent or declared reason--such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (interpreting Fed.R.Civ.P. 15(a)); accord Hemphill v. Schott, 141 F.3d 412, 420 (2d Cir.1998). The magistrate judge appears to have denied the motion for two independent reasons: because the motion was untimely under the trial court's uniform pretrial scheduling order and because Mr. Dluhos's amendment to bring his claim in diversity would be futile. Dluhos, 979 F.Supp. at 140-41.
 
 
 19
 In the circumstance of this case, the untimeliness of Mr. Dluhos's motion alone may not justify denying his motion to amend. There is no indication in the record of any dilatory motive on Mr. Dluhos's part; rather his professed interest in the litigation has always been to gain title to the vessel as soon as possible. And although it is certainly true that Mr. Dluhos's most recent motion to amend came nearly nine months late according to the scheduling order, he filed it in immediate response to the trial judge's denial of his motion to arrest the vessel. In addition, it is unlikely that such an amendment would cause undue prejudice to any party given that the litigation did not appear to be anywhere near substantive resolution at the time of the magistrate judge's decision. Finally, as a pro se litigant, Mr. Dluhos should be permitted some leeway in stating his claim with procedural accuracy. See Satchell, 745 F.2d at 785. That said, it is true that "the grant or denial of an opportunity to amend is within the sound discretion of the District Court," Foman, 371 U.S. at 182, 83 S.Ct. 227; Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir.1998), and the magistrate judge's opinion is not pellucidly clear on the extent to which he relied on untimeliness as an independent reason for denying the motion to amend. Dluhos, 979 F.Supp. at 140-41. Therefore, because there exist other grounds for the magistrate judge's decision, we need not determine whether the untimeliness of the motion to amend, standing alone, could have constituted a sufficient ground for his ruling.
 
 
 20
 The magistrate judge's other reason for denying the motion was his finding that Mr. Dluhos's action "cannot succeed because his entire claim of title to the vessel is based on the law of finds, a concept grounded in admiralty." Dluhos, 979 F.Supp. at 141. Based on this determination, the magistrate judge concluded that the motion to amend the complaint must be denied as futile. Id. Although we agree with the trial court that Mr. Dluhos's proposed amendment to state a claim in diversity would be futile, the magistrate judge's reason for finding futility was not correct as a matter of law. Although the law of finds has been held to apply in some admiralty proceedings, see, e.g., Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel, 569 F.2d 330, 336-37 (5th Cir.1978), it is also quite clear that finds law exists independently in New York State law. See, e.g., Foulke v. New York Consol. R. Co., 228 N.Y. 269, 273, 127 N.E. 237, 238 (1920); see also Hoelzer v. City of Stamford, 933 F.2d 1131, 1138 (2d Cir.1991) (applying the New York law of finds). If Mr. Dluhos were able to bring his claim in diversity and were permitted to rely on New York law in doing so, New York's law of finds would surely provide him with a remedy.[5]
 
 
 21
 The magistrate judge was, however, not far from the mark. Mr. Dluhos's motion to amend is futile, but for two independent reasons not relied on by the trial court. First, though not dictated by the substantive law of finds, the nature of the action brought by Mr. Dluhos is exclusive to admiralty jurisdiction and therefore may not be brought in diversity. Alternatively, even if Mr. Dluhos's claim were cognizable in diversity, in this case, the substantive admiralty law that would apply carries with it a legal fiction that a vessel may not be abandoned. Because a successful claim under the law of finds requires that the found property be abandoned, the fiction of nonabandonment dictates that Mr. Dluhos's claim must fail.
 
 A. Exclusive Admiralty Jurisdiction
 
 22
 Although the Constitution provides that the reach of federal courts "shall extend ... to all Cases of admiralty and maritime jurisdiction," U.S. Const. art. III, § 2, cl. 1, federal courts' jurisdiction over such claims is not exclusive. See American Dredging Co. v. Miller, 510 U.S. 443, 446, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). As explained in the modern expression of the Judiciary Act of 1789: "The district courts shall have original jurisdiction, exclusive of the courts of the States of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (1994). It is well-established that a claim may be cognizable under both federal admiralty law and state law. Cf. American Dredging, 510 U.S. at 451-52, 114 S.Ct. 981 (quoting Romero v. International Terminal Operating Co., 358 U.S. 354, 373-74, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), to indicate the range of areas in which state law provides its own remedies in the maritime context). Thus, under § 1333(1), a plaintiff who has a cause of action cognizable both under federal admiralty law and under state law has three choices as to how to bring the action: The plaintiff may bring (1) a federal admiralty action in federal court, (2) an action in state court, or (3) a diversity action in federal court, assuming the additional requirements for diversity jurisdiction are met.
 
 
 23
 Nonetheless, certain classes of cases are cognizable only in admiralty, and therefore a claim in diversity will not lie in those circumstances. In this respect, "[a]n action against [a] vessel in rem would fall within the exclusive admiralty jurisdiction and could not be brought under diversity jurisdiction." T.N.T. Marine Serv. Inc. v. Weaver Shipyards & Dry Docks, Inc., 702 F.2d 585, 587 (5th Cir.1983), cert. denied, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983); see also Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44, 47 (2d Cir.1996) ("[S]tate courts may not provide a remedy in rem for any cause of action within the admiralty jurisdiction ....") (quoting and omitting internal quotation marks from American Dredging, 510 U.S. at 446-47, 114 S.Ct. 981). The Supreme Court has recently reaffirmed this point: "An in rem suit against a vessel is, we have said, distinctively an admiralty proceeding, and is hence within the exclusive province of the federal courts." American Dredging, 510 U.S. at 446-47, 114 S.Ct. 981; see also 14A Charles Alan Wright et al., Federal Practice and Procedure § 3672, at 314 (3d ed. 1998) ("The federal courts consistently have held that ... in rem jurisdiction [against a vessel] is exclusive in the federal admiralty courts, and is unavailable in actions at law in either the state or federal courts"). The Federal Rules of Civil Procedure permit the same conclusion, explaining that "[i]f the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not." Fed.R.Civ.P. 9(h). This leaves us with two questions: 1) whether the New York is a vessel, and 2) if so, whether Mr. Dluhos's proposed action in diversity would fall within the exclusive jurisdiction for in rem admiralty actions described by American Dredging and its predecessor cases.
 
 
 24
 The New York plainly is a vessel for purposes of admiralty jurisdiction. In his opinion, the magistrate judge applied the "dead ship doctrine" to determine whether the New York "no longer has status as a vessel" and therefore is no longer subject to admiralty jurisdiction. Dluhos, 979 F.Supp. at 140. It is true that the dead ship doctrine or the analogous requirement that a cause of action "bear a significant relationship to traditional maritime activity" have served to remove cases from admiralty jurisdiction that are more properly brought under state law. See, e.g., Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 268, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) (using the "significant relationship" requirement to dismiss an admiralty based tort claim arising out of a plane crash in Lake Erie); Robert E. Blake Inc. v. Excel Envtl., 104 F.3d 1158, 1160-62 (9th Cir.1997) (applying the dead ship doctrine to remove a contract claim from admiralty jurisdiction). We question, however, the applicability of the dead ship doctrine outside the area of maritime torts and contracts, particularly in the area of disputed ownership of property located in navigable waters. For example, numerous actions involving conflicting claims to ancient shipwrecks--which are as dead as any ship can be in terms of navigational function--have proceeded in admiralty unimpeded by the dead ship doctrine. See, e.g., Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 974 F.2d 450 (4th Cir.1992), cert. denied, 507 U.S. 1000, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993); Treasure Salvors, 569 F.2d at 330. Even if the doctrine may apply in some circumstance outside of maritime tort and contract law, this case certainly does not provide an opportunity to use it, given that the New York was floating in a body of water used in maritime commerce. Accordingly the dead ship doctrine does not require the counterintuitive finding that the New York is not a vessel.
 
 
 25
 The issue of whether Mr. Dluhos's proposed diversity action would be barred because it is in effect an in rem action is more difficult. We begin by noting that Mr. Dluhos has consistently characterized his claim as one to establish title as against the rest of the world, see, e.g., Brief for Plaintiff-Appellant Emre E. Dluhos at 7; indeed, he has sought on at least one occasion to have the State removed from the action as a party. We therefore conclude for purposes of this appeal that Mr. Dluhos does not seek to bring an ordinary in personam action under 28 U.S.C. § 1332 against a series of individual defendants, including New York State or other current or potential claimants he is able to identify and serve.[6] Instead, although it is necessary for the substantive success of his claim that Mr. Dluhos allege that the vessel is abandoned and therefore has no known owner,[7] we assume for purposes of our analysis that he seeks to establish title as against the entire world by bringing an action against the successors to its most recent owner, the Sandusky Maritime History Association, as absent defendants. See 28 U.S.C. § 1655 (1994).
 
 
 26
 Section 1655 provides in pertinent part that: "In an action in a district court ... to remove any ... cloud upon the title to ... personal property within the district ... [i]f an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall ... affect only the property which is the subject of the action."[8] Id. Section 1655 does not represent an expansion of the subject matter jurisdiction of the federal courts, and an independent subject matter jurisdiction basis must exist, such as diversity under 28 U.S.C. § 1332. See 14 Charles Alan Wright et al., Federal Practice and Procedure § 3632, at 31-33 (3d ed.1998) (citing Greeley v. Lowe, 155 U.S. 58, 72, 15 S.Ct. 24, 39 L.Ed. 69 (1894)). If a plaintiff has chosen diversity as the basis for subject matter jurisdiction, as Mr. Dluhos has done here, the plaintiff must identify nominal defendants. However, the court in a § 1655 action does not have in personam jurisdiction over those nominal defendants; it can only exercise § 1655 jurisdiction over the res. Cases and commentators have therefore characterized actions under § 1655 as either in rem, see, e.g., Graff v. Nieberg, 233 F.2d 860, 862 (7th Cir.1956); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1070, at 422 (2d ed.1987), or quasi-in rem, see, e.g., First Charter Land Corp. v. Fitzgerald, 643 F.2d 1011, 1016 (4th Cir.1981); Dry Clime Lamp Corp. v. Edwards, 389 F.2d 590, 597 (5th Cir.1968) (citing William Wirt Blume, Actions Quasi in Rem Under Section 1655, Title 28, U.S.C., 50 Mich. L.Rev. 1 (1957)).
 
 
 27
 Whether brought in rem or quasi-in rem, § 1655 actions bear the hallmarks of a typical in rem action. For example, for an action under § 1655 to go forward, the res must be in the constructive possession of the court (although actual possession is not necessary). See First Charter Land Corp., 643 F.2d at 1014; see also Watts v. Alexander, Morrison & Co., 34 F.2d 66, 68 (E.D.N.Y.1929), affirmed, 45 F.2d 968 (2d Cir.1930) (referring to § 1655's predecessor statute); 14 Wright et al., § 3633 (discussing the requirement that the property at issue be within the constructive possession of the court). In addition, remedies for such actions are limited to the res at issue, so an in personam claim seeking a judgment against a person rather than the property at issue will not permit application of the statute. See Harrison v. Prather, 404 F.2d 267, 269 (5th Cir.1968) (per curiam); 14 Wright et al., § 3635, at 62-63.
 
 
 28
 More importantly, however a § 1655 action is characterized, it would be futile for Mr. Dluhos to bring such an action. To the extent that Mr. Dluhos's potential § 1655 action is a quasi-in rem action, it would not accomplish his objectives. The judgment in a quasi-in rem action affects only the defendant's or defendants' claim to the res, rather than the claims of "all the world." 16 James Wm. Moore et al., Moore's Federal Practice p 108.70 (3d ed.1998) (citing Restatement (Second) of Judgments § 6 cmt. a (1982)). Mr. Dluhos, as we explain above, has always sought title as against the entire world.
 
 
 29
 In order to establish title as against the whole world, Mr. Dluhos's action under § 1655 would necessarily have to be a true in rem action. This is so because he seeks to adjudicate his right to the New York as against all possible owners, not simply against one given defendant. See id.; see also The Moses Taylor, 71 U.S. (4 Wall.) 411, 427, 18 L.Ed. 397 (1866) (suggesting that an action seeking to secure title "against all the world" must necessarily be brought in rem ); cf. Madruga v. Superior Court of California, 346 U.S. 556, 561, 74 S.Ct. 298, 98 L.Ed. 290 (1954) (holding that an admiralty action was permissible in diversity where "it does not affect the interests of others in the world at large, as it would if this were a proceeding in rem to enforce a lien"). As we discuss above, for all in rem actions against a vessel, admiralty jurisdiction is exclusive. Therefore, if Mr. Dluhos brought a true in rem action involving the New York, he would be limited to admiralty jurisdiction and could not bring his claim in diversity. Because cases brought under admiralty jurisdiction are subject to admiralty procedural rules, Mr. Dluhos's claim would still be governed by Supplemental Rule D, which requires that the vessel be arrested. Accordingly, an amendment attempting to assert a cause of action in diversity would be futile.
 
 B. The Substantive Law of Admiralty
 
 30
 Even if Mr. Dluhos could permissibly bring his claim in diversity under § 1655, his complaint would still have been properly denied as futile because Mr. Dluhos's claim also would ultimately fail under the substantive law of admiralty.
 
 
 31
 In cases where admiralty jurisdiction is not exclusive and a claim may be brought either in admiralty or in diversity, the plaintiff may choose the jurisdictional grounds on which to bring the action. See Fed.R.Civ.P. 9(h). This decision carries only limited consequences, however, because any differences occasioned by the difference in forum are limited to procedure, and indeed procedures may differ depending on the basis of subject matter jurisdiction only when they do not constitute " 'characteristic feature[s]' of admiralty or a doctrine whose uniform application is necessary to maintain the 'proper harmony' of maritime law."[9] American Dredging, 510 U.S. at 447, 114 S.Ct. 981; accord Aurora Maritime, 85 F.3d at 47. As to nonprocedural law, for claims permissibly brought in both admiralty and diversity, "[t]he same substantive law pertains to the claim regardless of the forum, a type of 'reverse-Erie' to ensure the uniform application of admiralty law." Ghotra v. Bandila Shipping, Inc., 113 F.3d 1050, 1054-55 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1034, 140 L.Ed.2d 101 (1998) (citing Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 384, 38 S.Ct. 501, 62 L.Ed. 1171 (1918)). Accordingly if Mr. Dluhos were able to bring his claim in diversity, his claim would still look to the substantive law of admiralty.
 
 
 32
 In admiralty cases, courts have traditionally applied a legal fiction to ships, under which an owner or the owner's successor retains title to a ship no matter how long it has been abandoned. See, e.g., Columbus-America Discovery Group, 974 F.2d at 461; see also 3A Martin J. Norris, Benedict on Admiralty, § 150, at 11-1 (1997) ("When articles are lost at sea the title of the owner in them remains, even if they are found floating on the surface or after being cast upon the shore. Should a vessel be abandoned without hope of recovery or return, the right of property still remains with the owner."). The fiction exists to favor the use of salvage law over the law of finds, presumably " 'because salvage law's aims, assumptions, and rules are more consonant with the needs of marine activity and because salvage law encourages less competitive and secretive forms of conduct than finds law.' "[10] Columbus-America Discovery Group, 974 F.2d at 460 (quoting Hener v. United States, 525 F.Supp. 350, 356 (S.D.N.Y.1981)). We acknowledge that the application of this fiction has recently been called into question and, in some cases involving long abandoned shipwrecks, discarded. See, e.g., Treasure Salvors, 569 F.2d at 336-37. This case, however, does not provide us with an opportunity to reexamine the blanket application of the nonabandonment fiction. Unlike situations in which courts have proposed discarding the fiction, the New York has neither been expressly and explicitly abandoned by its owners,[11] nor has it rested for centuries under fathoms of open ocean.
 
 
 33
 Therefore even if Mr. Dluhos's claim were cognizable in diversity, because the New York could not have been abandoned as a matter of law, Mr. Dluhos's claim under the law of finds must fail. For that reason as well, his motion to amend was properly denied as futile.
 
 CONCLUSION
 
 34
 For the foregoing reasons, we affirm the judgment entered in the court below, dismissing Mr. Dluhos's Second Amended Complaint and denying his motion to amend.
 
 
 
 [1]
 The brief recitation of facts that follows is uncontroverted and derives largely from the pleadings. Additional background information on the vessel may be found in Andrew Jacobs, Drama Off the High Seas; Lawsuit Rages Over a Decaying, and Historic, Tugboat, N.Y. Times, May 21, 1998, at B1
 
 
 [2]
 Since its launching, the tug has borne many names, including Tankmaster # 1, Beth Tankship # 2, and now New York
 
 
 [3]
 The New York is apparently an exceptional example of a late nineteenth century seagoing tug. With her original boilers, engine, and hull--albeit in poor condition--she is believed to be the only vessel of her class in existence. At the time the litigation was filed, applications to list her on the New York State and National Registers of Historic Places were pending
 Evidently, since the magistrate judge's decision, the New York State Canal Corporation (the branch of the New York State Thruway Authority charged with maintaining the Erie Canal) assisted a boat salvager from Kingston, NY, in removing the New York from its location near Waterford. Apparently the salvager now has possession of the vessel in Kingston.
 
 
 [4]
 After granting the first motion to amend the complaint, the magistrate judge ordered that Mr. Dluhos publish notice of his action. In response to his published notice, the National Maritime Historical Society came forward, asserting that it was the sole legal owner of the vessel. The Society has since assigned its claim to the Friends of the Catawissa, a nonprofit group located in New York City
 
 
 [5]
 Because Mr. Dluhos claims that the New York was abandoned and because he has evidently initiated this action within six months of his "finding" the vessel, Article 7-B of New York's Personal Property Law would not apply to any action he brought under state law. See N.Y. Pers. Prop. Law § 251(3) (McKinney 1992) ("Abandoned property ... shall be presumed to be lost property and such presumption shall be conclusive unless it is established in an action or proceeding commenced within six months after the date of the finding that the property is not lost property.") (emphasis added). Therefore, New York's state law would not require Mr. Dluhos to meet the Article's requirements--described in §§ 252-58--for claiming lost property
 
 
 [6]
 Even if he were attempting to do so, any such amendment to his complaint would still be futile for the reasons described below in Section II.B
 
 
 [7]
 As explained below, this allegation raises problems of its own for Mr. Dluhos's claim under the substantive law of admiralty
 
 
 [8]
 Because we determine below that the § 1655 action Mr. Dluhos seeks to bring would necessarily be an in rem action cognizable only in admiralty, we need not determine whether Mr. Dluhos has complied with the procedural requirements of § 1655, such as attempted service
 
 
 [9]
 In this respect, we note without deciding that admiralty's arrest requirement may qualify as a characteristic feature of admiralty law and may therefore apply even if Mr. Dluhos's claim were cognizable in diversity. Cf. Aurora Maritime, 85 F.3d at 47-48 (holding that maritime attachment under Supplemental Admiralty Rule B constitutes a "characteristic feature" of admiralty law under American Dredging ). Having already found Mr. Dluhos's motion to amend to be futile for two independent reasons, we need not seek out a third
 
 
 [10]
 The central difference between salvage and finds law is that under salvage law, "the original owners still retain their ownership interests in such property, although the salvors are entitled to a very liberal salvage award ...., and if no owner should come forward to claim the property, the salvor is normally awarded its total value." Columbus-America Discovery Group, 974 F.2d at 459. "A 'find' in maritime law differs from salvage in that in the former instance the property found has never been owned by any person. It therefore belongs to the finder." 3A Norris § 158, at 11-15
 
 
 [11]
 It is not clear whether the trial court made a specific finding that the vessel had been abandoned in any technical sense. See Dluhos, 979 F.Supp. at 139. Regardless, because such a finding would have found absolutely no support in the record, to the extent the trial court found the New York to have been expressly abandoned, it was in error