**FIRST CHARTER LAND CORPORATION, a Virginia Corporation, Appellee,**

v.

**Thomas C. FITZGERALD, Jr., Appellant.**

**No. 80-1220.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 5, 1981.

Decided March 5, 1981.

Ronald K. Ingoe, Fairfax, Va. (Michael C. Montavon, Chess, Durrette & Roeder, P. C., Fairfax, Va., Thomas R. Todd, Jr., Macey & Zusmann, Atlanta, Ga., on brief), for appellant.

Richard P. Nageotte, Woodbridge, Va. (Robert J. Zelnick, Nageotte, Borinsky & Zelnick, Woodbridge, Va., on brief), for appellee.

Before WIDENER, MURNAGHAN and SPROUSE, Circuit Judges.

MURNAGHAN, Circuit Judge:

Thomas Fitzgerald appeals from a district court judgment declaring First Charter Land Corporation the rightful owner of a certain bank account as well as of certain notes secured by deeds of trust which had earlier been endorsed to Fitzgerald. Fitzgerald raises several subject matter and personal jurisdictional issues. We resolve each of the issues against Fitzgerald and so affirm.

The procedural history of the present case has involved numerous jurisdictional contests in several different suits, all related to First Charter's claims to ownership of the notes and bank account. On the state court side, there has been a chancery action, and an action at law, to which has been joined an attachment proceeding. All were filed by First Charter in the Circuit Court of Fairfax County, Virginia.

The chancery action, to which defendant Fitzgerald was not named a party, resulted in some $200,000 worth of notes being deposited with the Clerk of the Circuit Court of Fairfax County. Some of the notes had been endorsed to Fitzgerald. Proceeds from the notes were banked in a special account with Guaranty Bank and Trust Co. of Fairfax, Virginia. Subsequently, the Fairfax County Circuit Court ruled that ownership of the notes (and of the associated bank account) could not be adjudicated without Fitzgerald, since he was a necessary party.

In the law case, also filed in the Circuit Court of Fairfax County, First Charter sought *in personam* monetary damages from Fitzgerald based upon alleged fraud and misrepresentation. While awaiting the outcome of the law case, and as a part of that case, First Charter filed a petition for attachment of the notes. However, the Virginia Circuit Court held that Fitzgerald had not transacted business in Virginia sufficient to confer *in personam* jurisdiction under the Virginia Long Arm statute, 2 Va.Code § 8.01–328.1 (1977 repl. vol.). Thereupon, the Circuit Court judge granted Fitzgerald's motions to quash service of the law case, including service of the attachment proceeding. Pending appeal by First Charter to the Supreme Court of Virginia, the Circuit Court continued to retain custody of the notes and to supervise the account at Guaranty Bank.

While the appeal of the law case was pending, First Charter filed the instant diversity action in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1655 (1966), which provides for certain procedures in suits to claim title or to remove a cloud upon title to real or personal property. On February 14, 1980, six days before trial in the district court, the Supreme Court of Virginia denied First Charter's appeal, ending any need for the Virginia Circuit Court to retain possession or control over the notes and bank account. Subsequently, the district court ruled that the notes were the property of First Charter. On appeal from the district court decision, Fitzgerald does not address or challenge that determination on the merits. Instead he contends that the district court lacked jurisdiction to clear title to the notes, or that collateral estoppel barred a raising of the merits.

### I.

■ Section 1655 provides:

In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.

Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.

If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action . . . .

Fitzgerald asserts that the district court lacked jurisdiction under § 1655 to adjudicate the ownership of the notes because the notes were in the exclusive possession and control of another court, the Circuit Court of Fairfax County, Virginia. Implicit in his argument lies an assumption that the district court had to obtain actual physical possession of the subject matter of the suit —i. e. the notes and bank account—before it could adjudicate ownership. However, § 1655 requires only that the res be located "within the district." It is unnecessary that a district court acting pursuant to § 1655 achieve actual possession of the res. We need not, therefore, determine whether the district court, operating in cooperation and harmony with the Fairfax County Circuit Court, could have achieved subordinate or secondary possession of the notes and bank account. See Lubbock Hotel Co. v. Guaranty Bank & Trust Co., 77 F.2d 152, 155 (5th Cir. 1935).

In support of his contention that the district court improperly exercised jurisdiction over the notes, Fitzgerald cites a long line of cases that hold that when one court has possession of property, that court's possession may not be disturbed by any other court. See, e. g., Colorado River Water Conservation District v. United States, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) ("It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts."). Founded on principles of comity, the rule forecloses unseemly and inefficient power struggles between courts having concurrent jurisdiction, but whose simultaneous exercise of their jurisdictions might result in inconsistent adjudication.

■ Fitzgerald argues that because the Fairfax County Circuit Court "possessed" the "property," the district court was barred from adjudicating any interest in the notes or bank account. Here, however, Fitzgerald plays on the word property. In contemporary jurisprudence, "property" refers to both the actual physical object and

the various incorporeal ownership rights in the *res*, such as the rights to possess, to enjoy the income from, to alienate, or to recover ownership from one who has improperly obtained title to the *res*. Fitzgerald assumes that jurisdictional authority derives exclusively from *possession* of the physical object. But such is not the law. Jurisdiction is based on the authority to adjudicate property *interests*, not upon the fortuity of having actual *possession* of a *res*. As stated by the Supreme Court:

> while a federal court may not exercise its jurisdiction to affect or disturb the *possession* of property in the custody of a state court, it may exercise its jurisdiction to adjudicate *rights* in such property where the final judgment does not undertake to interfere with the state court's *possession* save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

*Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946) (citations omitted; emphasis added).

▮▮▮ Here, the Virginia Circuit Court retained possession of the notes. It would have been improper for the federal district court to interfere with the actual possession of the notes. But the district court expressly refrained from interfering with possession and from adjudicating any other property interest over which the Circuit Court had assumed jurisdiction.[1] The rule cited by Fitzgerald—that one court's possession of property may not be interfered with by

any other court—bars the exercise of jurisdiction by the second court only insofar as the second court's assertion actually conflicts with the jurisdiction of the first court.

> While it is often said that of two courts having concurrent jurisdiction *in rem*, that one first taking possession acquires exclusive jurisdiction, it is exclusive only so far as its exercise is necessary for the appropriate control and disposition of the property. The jurisdiction does not extend beyond the purpose for which it is allowed, to enable the court to exercise it appropriately and to avoid unseemly conflicts. The other court does not thereby lose its power to make orders which do not conflict with the authority of the court having jurisdiction over the control and disposition of the property.

*Penn General Cas. Co. v. Pennsylvania*, 294 U.S. 189, 198, 55 S.Ct. 386, 390, 79 L.Ed. 850 (1935) (citations omitted).

In the instant proceedings, no jurisdictional conflict existed between the two courts. In the chancery case, the Virginia Circuit Court specifically declined to adjudicate the question of ownership of the notes or the bank account. In addition, the Circuit Court dismissed the law case and attachment proceeding for want of personal jurisdiction over Fitzgerald. It did not ever consider the ownership question.[2]

On the other hand, the right of ownership of the notes was the single issue determined by the district court. Since there were no overlapping jurisdictional claims between

---

1. The district court stated that any order it entered adjudicating ownership of the notes would be "subject to and subordinate to any intervening order as to the disposition of said *res*" by the Virginia state court then holding the *res*. Thus, the District Court was exceedingly careful to emphasize that its action to determine ownership rights was not to be interpreted as undercutting any contrary determination the state court might make.

2. Fitzgerald suggests that, in Virginia, filing an attachment proceeding in connection with a pending suit, *see* 2 *Va.Code Ann.* § 8.01–574 (1977 Repl. Vol.), necessarily involves the Virginia state court in an adjudication of the ownership of the objects attached. It is true that the mere possession of a *res* through an attach-

ment proceeding may sometimes suffice to confer *in rem* jurisdiction to adjudicate ownership of the *res*. However, the Virginia court here clearly did not regard its possession and control of the notes and bank account pursuant to the attachment proceedings as an independent basis of jurisdiction. Rather, it apparently determined that the attachment operated as a contingent lien on the property until the plaintiff could obtain a judgment and have such property applied to its satisfaction. *See, e. g., Ross v. Peck Iron & Metal Co.*, 264 F.2d 262, 268 (4th Cir. 1959). Accordingly, the Circuit Court dismissed the subsidiary attachment proceeding along with the law case for lack of *personal* jurisdiction over Fitzgerald, and did not ever consider the ownership issue.

the two courts, the control and possession over the notes and bank account exercised by the Virginia court did not, consequently, preclude the federal court from resolving the issue of ownership.

## II.

■ Fitzgerald next contends that the nature of the claim before the district court was purely *in personam* in nature, and, since the provisions of § 1655 govern only *in rem* proceedings, the instant suit was not cognizable under § 1655. However, § 1655 is not limited to *in rem* actions. Section 1655 provides in pertinent part that:

If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action.

By clear implication, an adjudication brought under § 1655, as regards a defendant who chooses to appear and defend, may lead to a personal judgment and consequently may affect property over and beyond that which is the subject of the lawsuit. In effect, § 1655 initially permits a *quasi in rem* action to enforce a judgment personal in character against an absent defendant's property. If the defendant then chooses to appear and defend, the case becomes an *in personam* one.

■ But in any event, it is unnecessary to resolve whether the instant case proceeded on an *in rem* or on an *in personam* theory. What *is* significant is that § 1655 permits a district court to grant relief of the sort given here—a declaration of ownership rights in certain specifically identifiable property located within the district— and that the § 1655 relief granted did not extend beyond the specific property (i. e., the notes and the bank account) that were the subject of the suit.

## III.

Fitzgerald claims that there was not complete diversity of citizenship "among" the "defendants." He asserts that the Clerk of the Virginia state court (in whose hands reposed the deeds of trust certificates) and the Guaranty Bank (with whom the bank account was maintained subject to state court supervision) were "necessary and indispensable" parties to the instant action. Therefore, Fitzgerald contends, the federal action should have been dismissed, inasmuch as no diversity existed. Both the Clerk and the Guaranty Bank, like the plaintiff, were Virginia citizens.

Yet neither the Guaranty Bank nor the Clerk was named as a defendant. Thus, Fitzgerald cannot claim that their "presence" in the suit destroyed diversity of citizenship. Fitzgerald instead seems to be arguing that the district court erred by not requiring that the Clerk and the Guaranty Bank be joined as necessary parties defendant, with the consequence that diversity would thereby be destroyed.

■ Even if Fitzgerald's argument is taken as an appeal from a failure to join "necessary and indispensable parties," the contention is ill-founded. As the district court observed, neither the Guaranty Bank nor the Clerk was a necessary party in order to determine the proper owner of the notes and the bank account: neither had or claimed any interest in the property they held. Each merely held the property for the true owner. Therefore, neither was a necessary party to the litigation and the court's failure to dismiss the action for failure to join them was not error.

## IV.

■ The district court held that one Charles Fife was Fitzgerald's agent, so that certain of Fife's actions respecting the notes could be imputed to Fitzgerald. However, Fitzgerald claims that the Circuit Court, in the action at law, already determined that Fife was not Fitzgerald's agent, and, therefore, that the district court was collaterally estopped from rehearing the issue.

The relevant State court proceeding involved Fitzgerald's motion to quash service

of process under the Virginia Long Arm Statute, 2 *Va.Code Ann.* § 8.01–328 *et seq.* (1977 Repl. Vol.). In order to demonstrate that Fitzgerald had transacted business in Virginia, First Charter introduced evidence showing that the contested notes had been given to Fife in Virginia, who subsequently delivered them to Fitzgerald in Georgia.[3] Considering only those acts which had occurred in Virginia, the Circuit Court held that the delivery of the notes to Fife did not amount to "transacting business" for purposes of asserting long arm jurisdiction over Fitzgerald.[4] Although the evidence, adduced on a purely jurisdictional issue, that Fife had accepted and delivered the notes indicated to the Circuit Court that Fife was "no more than a courier," the Circuit Court was explicitly referring only to those events which had transpired in Virginia that might permit Virginia to assert jurisdiction over Fitzgerald. The State court did not determine, and had no need to determine, whether Fife was, for other purposes, in other respects and perhaps in another jurisdiction, Fitzgerald's agent. Therefore, the district court, dealing with the merits, as to which geographical considerations were of no relevance, was not collaterally estopped from reaching the agency issue.

*AFFIRMED.*

---

**3.** The record does not indicate the manner in which the notes were subsequently transferred from Fitzgerald to the Circuit Court of Fairfax County, Virginia.

**4.** The Virginia Circuit Court decision stated: In order for the Court to exercise jurisdiction over Mr. Fitzgerald the Court must find that Mr. Fitzgerald did transact business in Virginia and it would be sufficient for only one transaction to confer jurisdiction. The negotiations were in Georgia and there is no evidence of any negotiations in Virginia. The delivery of the notes to Mr. Fife is not sufficient because *from the evidence* Mr. Fife was no more than a courier and did not amount to transacting business in Virginia. The notes could have been mailed to Georgia or sent by any means without having any effect upon the alleged agreement. (Emphasis added).