UNITED STATES of America, Plaintiff,

v.

ONE OIL PAINTING ENTITLED "FEMME EN BLANC" BY PABLO PICASSO, Defendant.

No. CV 04–8333FMCAJWX.

United States District Court, C.D. California.

March 31, 2005.

John E. Lee, AUSA–Office of U.S. Attorney Asset Forfeiture Division, Los Angeles, CA, for Plaintiff.

Polly Towill, Sheppard Mullin Richter & Hampton, Los Angeles, CA, David M.

Rownd, Richard H. Chapman, Chicago, IL, Christopher M. Loveland, Mark E. Nagle, Roscoe C. Howard, Jr., Sheppard Mullin Richter and Hampton, Washington, DC, for Defendant.

### ORDER DENYING CLAIMANT'S MOTION TO DISMISS COMPLAINT FOR FORFEITURE AND ORDER DENYING CLAIMANT'S MOTION TO TRANSFER ORDER DENYING MOTION TO DISMISS CROSS–COMPLAINT OF THOMAS BENNIGSON

COOPER, District Judge.

This matter is before the Court on Claimant Marilynn Alsdorf's ("Alsdorf") Motion to Dismiss Complaint for Forfeiture or Alternatively to Transfer Case (docket no. 24), filed December 13, 2004, and Alsdorf's Motion to Dismiss Cross–Complaint (docket no. 31), filed January 20, 2005. The Court has read and considered the moving, opposition, reply, and sur-reply documents submitted in connection with this motion. Following oral argument on March 28, 2005, the Court took this matter under submission. For the reasons and in the manner set forth below, the Court hereby **DENIES** the motion to dismiss and to transfer. The Court **DENIES** the motion to dismiss the cross-complaint.

### I. Background

This civil forfeiture action concerns an oil painting entitled "Femme en Blanc," which was allegedly stolen from its owner by the Nazis during World War II. The following summary is based on the Government's allegations.

The painting was created by Pablo Picasso in 1922. Complaint for Forfeiture ("Compl."), at ¶ 4. In 1926 or 1927, Carlotta Landsberg or her husband bought the painting. Id. at ¶ 9. In 1938 or 1939, Mrs. Landsberg sent the painting to Paris art dealer Justin K. Thannhauser for safekeeping. Id. at ¶ 10. In August 1939, Thannhauser fled Paris to escape Nazi persecution. Id. at ¶ 11. In 1940, the contents of Thannhauser's home, including the painting, were looted by the Nazis. Id.

On June 12, 1958, Thannhauser wrote to Mrs. Landsberg that, "[u]pon the occupation of Paris in 1940, when we were no longer in Paris and the house was closed, the entire contents of the four-story building-and with it your painting-were stolen." Id. at ¶ 12. Thannhauser wrote that, "during the four day long violent German national socialist plundering everything was taken out of the four-story house during the night and in trucks" by the Nazis. Id. After the war, Mrs. Landsberg searched for the painting, but was unable to locate it.

In 1947, the painting was included, with a small photo, in an inventory of looted paintings compiled by the Allied Command. Id. at ¶ 15. In 1975, a French art dealer named Maurice Covo asked New York art dealer Stephen Hahn whether Hahn would be interested in buying the painting, which Covo stated he might be able to acquire. Id. at ¶ 16. After Covo acquired the painting on consignment, in June 1975, Hahn traveled to Paris, where he purchased it. Id. at ¶ 17. In September 1975, Hahn sold the painting to claimant Alsdorf. Id. at ¶¶ 18–19. Hahn later stated that Covo had not told him that the painting was a product of Nazi looting. Id. at ¶ 18.

In 2001, Alsdorf sent the painting to David Tunkl of David Tunkl Fine Art in Los Angeles, California, for an exhibition that took place between September 20, 2001 and October 28, 2001. Id. at ¶ 20. After the exhibition ended, Tunkl returned the painting to Alsdorf, who was and is living in Chicago. Id.

In January 2002, Tunkl suggested to Alsdorf that he could sell the painting for her. *Id.* at ¶ 21. The painting was shipped from Chicago to Geneva Switzerland, at Tunkl's request. *Id.* In Geneva, the painting was viewed by Paris art dealer Didier Imbert, who was acting as an advisor to an unidentified European collector. As part of his due diligence, Imbert contacted the Art Loss Register ("ALR") in London, England. *Id.* at 22.

Sarah Jackson, the Historic Claims Director of the ALR, investigated the provenance of the painting in Swiss, German, and French archives and advised Imbert that the painting had been looted by the Nazis during the war. *Id.* at ¶¶ 25–25.

On April 17, 2002, Imbert wrote to Adam Cirker of Cirker's Fine Art in New York, advising him of the ALR's finding and asking Cirker to notify the owner of the finding. *Id.* at ¶ 27. On April 25, 2002, the ARL advised Imbert and Tunkl that the painting had been confiscated by the Nazis from its Jewish owner during World War II. *Id.* at ¶ 28.

On May 2, 2002, Imbert told Alsdorf that the ALR had advised him that the painting had been confiscated by the Nazis from its Jewish owner during World War II. *Id.* at ¶ 30.

In June 2002, Jackson located Mrs. Landsberg's sole heir in Berkeley, California, claimant Thomas C. Bennigson. *Id.* at ¶ 33.

On June 7, 2002, Jackson advised Alsdorf's attorney, Stephen Bernard, that the painting had been confiscated by the Nazis during World War II and that the ALR had "extensive documentation" from three countries showing the confiscation of the painting by the Nazis. *Id.* at 34.

In July 2002, Jackson flew to Los Angeles and told Bernard and Tunkl at a lunch meeting that the painting had been looted by the Nazis from Thannhauser's home,

that Thannhauser had been holding it for its true owner, and that the owner's grandson was her sole heir. *Id.* at ¶ 35. Jackson also presented Bernard and Tunkl with many documents uncovered from archives showing that the painting had been "looted" by the Nazis. *Id.* These documents were later sent to Alsdorf in Chicago. *Id.* at ¶ 36.

On December 13, 2002, Alsdorf instructed Bernard and Tunkl to transport the painting from Los Angeles back to Chicago. *Id.* That same day, Alsdorf also telephoned Tunkl's assistant, Michele Burt, and instructed her to send the painting to her in Chicago. *Id.* at ¶ 44.

On December 19, 2002, Benngison filed suit against Alsdorf in California Superior Court, Los Angeles County, and notified counsel for Alsdorf. *Id.* at ¶ 48. On December 20, 2002, the painting was transported to Chicago. *Id.* at ¶ 49. On June 16, 2003, the Superior Court found that it lacked personal jurisdiction over Alsdorf and granted her Motion to Quash the Summons. The California Court of Appeal affirmed the Superior Court's Order on April 15, 2004. The California Supreme Court accepted review of this decision on July 28, 2004, and the parties are currently awaiting a decision.

On September 10, 2004, Alsdorf filed a federal quiet title action pursuant to 28 U.S.C. § 1655 against Bennigson in Chicago ("Illinois action"). *Id.* at ¶ 50. No process has been served on the painting in that action. The docket sheet for that action reveals that the complaint was filed, and a stay was entered pending the decision of the California Supreme Court. No other action has been taken.

On October 6, 2004, the government filed this action for civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 2314, and 2315, alleging that Alsdorf transported property she knew was stolen in interstate

commerce. On October 21, 2004, the government served process on the painting. On November 8, 15, and 22, 2004, notice of the action was published. On January 3, 2005, the government and Alsdorf entered into a stipulated order, allowing her to retain physical possession of the painting.

On December 13, 2004, Alsdorf brought the instant motion to dismiss for lack of subject matter jurisdiction, or in the alternative, to transfer to the Northern District of Illinois. Alsdorf argues that this court lacks jurisdiction and that the Northern District of Illinois is a preferable venue. Also on December 13, 2004, Bennigson brought a cross-claim against Alsdorf for (1) replevin; (2) relief under Cal.Penal Code § 496; and (3) declaratory relief and constructive trust. On January 20, 2005, Alsdorf moved to dismiss the cross-claim for lack of personal jurisdiction.

## II. Motion to Dismiss Complaint for Forfeiture

■ Federal civil forfeiture actions are actions in rem. *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142 (9th Cir.1989). Federal quiet title actions, which do not "determine interests in specific property as against the whole world," but are brought against a defendant personally, are quasi in rem actions; "the [parties'] interest[s] in the property ... serve[ ] as the basis of the jurisdiction." *See State Engineer v. South Fork Bank of the Te-Moak Tribe of Western Shoshone Indians*, 339 F.3d 804, 811 (9th Cir.2003). The doctrine of prior exclusive jurisdiction applies to both in rem and quasi in rem actions. *Id.* The traditional distinction between in rem and quasi in rem jurisdiction has largely disappeared. *See* Restatement (Second) of Judgments, § 6, comment a. (1982).

■ The doctrine of prior exclusive jurisdiction prohibits a court from "assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court." *Cadillac Seville*, 866 F.2d at 1145 (citing *Penn Gen. Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935)). The purpose of the doctrine is to promote comity between courts, *Penn General*, 294 U.S. at 195, 55 S.Ct. 386, and to avoid the "logical and practical difficulty of two courts simultaneously vying for possession or control of the same property." *United States v. $79,123.49*, 830 F.2d 94, 97 (7th Cir.1987).

■ "Where the assertion of jurisdiction by the two courts is nearly simultaneous, it becomes important, as in the present case, to determine the precise time when the jurisdiction attaches." *Penn General*, 294 U.S. at 196, 55 S.Ct. 386. The *sine qua non* of in rem jurisdiction is seizure, control, or custody of the res. *See, e.g., Penn General*, 294 U.S. at 196, 55 S.Ct. 386 (holding that jurisdiction attaches when a complaint is filed and "process subsequently issues in due course"); *Donovan v. City of Dallas*, 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) (stating that court with custody is the court with in rem jurisdiction); *Alyeska Pipeline Service Co. v. Vessel Bay Ridge*, 703 F.2d 381, 384 (9th Cir.1983) ("Jurisdiction over the *res* is obtained by arrest under process of the court. In absence of an arrest, no decree in rem can be rendered against the *res*."); *Scarabin v. DEA*, 966 F.2d 989, 993 (5th Cir.1992) (stating that jurisdiction attached at moment of seizure and that a court must have physical control over property); *$79,123.49*, 830 F.2d at 96–97 (stating that an "injurious conflict of jurisdiction" could occur if "final process of the one could be levied on property which has been taken by the process of the other") (quoting *Hagan v. Lucas*, 35 U.S. (10 Pet.) 400, 403, 9 L.Ed. 470 (1836)); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1435 (11th Cir. 1991) ("In rem jurisdiction derives entirely

from the court's control over the defendant res."); *United States v. $2,542*, 754 F.Supp. 378, 380 (D.Vt.1990) (stating that in in rem actions "the court or its officer must have possession or control of the subject property in order to grant the relief sought"). The doctrine of prior exclusive jurisdiction applies when a state and federal court are both attempting to assert jurisdiction, or when two federal courts are attempting to assert jurisdiction. *See United States v. Howell*, 354 F.3d 693, 695 (7th Cir.2004).

Invoking the doctrine of prior exclusive jurisdiction, Alsdorf argues that because she filed the Illinois action one month before the Government brought its forfeiture action, the Illinois court obtained jurisdiction first, to the exclusion of this Court's exercise of jurisdiction. The difficulty with Alsdorf's argument is that the Illinois court has yet to assert jurisdiction over the res. No process has been served on the painting in the Illinois action; the painting is not in the custody, control, or possession of the Illinois court. Nearly a month lapsed between the filing of the Illinois action and the current action, and another three weeks lapsed between the filing of the current action and the seizure of the painting. No stay was in place in the Illinois action during that time, and yet no efforts were made to seize the painting or deposit the painting with the court.[1] On the other hand, this Court has asserted such jurisdiction. The painting was seized by U.S. Marshalls pursuant to a court order on October 21, 2004. Therefore, this Court was the first to obtain in rem jurisdiction over the painting.

■ Alsdorf's argument that the mere filing of a complaint establishes in rem jurisdiction is unavailing. In *Penn General*, the Court did state that jurisdiction attaches "upon the filing of the bill of complaint," but Alsdorf takes this statement out of context. In *Penn General*, the Court held that jurisdiction attaches upon the filing of the complaint "at least where process subsequently issues in due course." *Penn General*, 294 U.S. at 196, 55 S.Ct. 386. The Court reasoned that the court "whose jurisdiction and process are first invoked by the filing of the bill is treated as in constructive possession." *Id.* This way, confusion and uncertainty could be avoided as to what constitutes actual possession and priority of service of process in the two suits. *Id.* If process had been served on the painting in the Illinois action, the Illinois court would clearly have jurisdiction.[2] However, *Penn General* did not imply that service of process was unnecessary after a court obtained constructive possession or that filing a complaint alone was sufficient.

Similarly, in *Blackhawk Heating & Plumbing Co. Inc. v. Geeslin*, 530 F.2d 154 (7th Cir.1976), although the court stated that "[i]n rem jurisdiction attached when the ... proceedings were commenced," the court also concluded that state court had possession of the res. *Blackhawk* does not imply that merely instituting a legal proceeding confers in rem jurisdiction. Alsdorf has not cited any au-

---

1. Nor has the Illinois court found it has such jurisdiction. In its opinion staying the Illinois action (issued after process was served on the painting in this case), the court assumed, without deciding, that it had in rem jurisdiction. *See* Claimant's Motion to Dismiss, Ex. 5 at 13.

2. Alsdorf argues that process did issue in the Illinois action because she served Bennigson with process. While this may or may not be sufficient to establish personal jurisdiction over Bennigson, it does not establish jurisdiction over the painting. *Penn General* clearly requires process to be served on the res, not on an individual. *Penn General*, 294 U.S. at 196, 55 S.Ct. 386.

thority, and the Court is aware of none, in which in rem jurisdiction attached to the exclusion of other courts upon the filing of a complaint alone. In fact, if filing a complaint alone were sufficient to grant a court control over the res, the procedures for seizing a res and the courts' consistent insistence that custody and control are necessary would be entirely superfluous. *See, e.g.,* Rule C(3) of the Supplemental Rules of Certain Admiralty and Maritime Claims; cases *supra* (discussing need for control and custody).

Alsdorf argues that the general rules relating to in rem jurisdiction do not apply in the 28 U.S.C. § 1655 context. Because Alsdorf brought a quiet title action pursuant to this particular statute, she argues that the requirements of that statute and that statute alone apply. Alsdorf argues that § 1655 requires only that a "warning order" be served on the defendant and upon the person in possession or charge of the property.[3]

At the outset, the text of § 1655 is not helpful in determining whether process must be served on the painting. The statute does not address how jurisdiction is obtained over the property in question. Rather, it focuses on how personal jurisdiction is obtained over an out-of-state defendant. Therefore, contrary to Alsdorf's assertion, § 1655 does not set forth "different, yet quite specific, procedures" for obtaining in rem jurisdiction. It sets forth "different, yet quite specific procedures"

for obtaining in personam jurisdiction. *See Graff v. Nieberg,* 233 F.2d 860 (7th Cir.1956) (stating that "jurisdiction of the courts depends not at all on the citizenship of the parties but solely upon the location of the property within the district" and explaining that § 1655 pertains to personal jurisdiction); *see also* 14 Wright & Miller, *Federal Practice and Procedure,* § 3632 (3d ed.1998) (stating that § 1655 "establishes venue and provides an alternative to personal service").

■■■ "Whether brought *in rem* or quasi-*in rem,* § 1655 actions bear the hallmarks of a typical *in rem* action. For example, for an action under § 1655 to go forward, the *res* must be in the constructive possession of the court (although actual possession is not necessary)." *Dluhos v. The Floating and Abandoned Vessel, Known as "New York",* 162 F.3d 63 (2d Cir.1998) (citing *First Charter Land Corp.v. Fitzgerald,* 643 F.2d 1011, 1014 (4th Cir.1981)). In order for the court to exercise jurisdiction over property under § 1655, the property must be in dominion and control of the court. *See First Nat. Bank of Rome v. First Nat. Bank of Jasper,* 264 F. 83, 84 (5th Cir.1920) ("It is settled that constructive service can only bring nonresidents within the jurisdiction of a court where there is a res in the control of the court . . ."); *Watts v. Alexander, Morrison & Co.,* 34 F.2d 66, 68 (E.D.N.Y.1929) (same); Wright & Miller, *supra,* at § 3633 ("It is essential that the

---

**3.** Alsdorf did not follow this procedure because she did not serve an order on herself as the custodian of the property. She argues that it would be nonsensical to require her to serve an order on herself. Granted, the statute assumes that the person in possession of the property will be different from the plaintiff. Moreover, the requirement that an order be served on the custodian of the property exists not to establish jurisdiction, but to give that person notice of the action. *See 14 Charles Alan* Wright, Arthur R. Miller and

Edward H. Cooper, *Federal Practice and Procedure,* § 3632 (3d ed. 1998)("Compliance with the statutory obligation to *give notice* to the caretaker seems extremely desirable . . .")(emphasis added). Therefore, whether or not Alsdorf was required to serve herself with an order, simply because the statute says "shall," has no bearing on whether this Court has jurisdiction. Even if Alsdorf had served herself, this would serve a notice-giving function, not a jurisdictional function.

property involved in the litigation be 'in fact and substance' within the district *and* under the dominion and control of the district court asserting jurisdiction over it ...") (emphasis added). Property is brought under the dominion and control of the court through arrest of the property. *See Dluhos,* 162 F.3d at 69 (stating that a warrant of arrest brings the res into the constructive possession of the court).

The authority Alsdorf cites to the contrary does not seriously undermine the need for an arrest in this context. In *First Charter Land Corp.,* the court held that "actual physical possession" was unnecessary for a court to hear a § 1655 action. *First Charter,* 643 F.2d at 1014. The court held that not all § 1655 actions were actions in rem and declined to hold whether the action before it was an action in rem. *Id.* at 1016. The court reasoned that even though the property in question was in the custody of another court, it could still exercise jurisdiction pursuant to § 1655. Considering the prior exclusive jurisdiction rule, the court held that its exercise of jurisdiction would not be inconsistent with that of the court in custody of the res. *Id.* at 1015. It did not address whether, when proceeding on an in rem theory under § 1655, the property must otherwise be in the custody of the court, even if only constructively. The court did not consider whether, had its jurisdiction been in conflict with the court holding custody, arrest of the res would be necessary to adjudicate the rights in the property. Nor did it address whether arrest of the res is necessary to render the court's jurisdiction over the res exclusive.

Neither does *Huntress v. Estate of Huntress,* 235 F.2d 205, 208 (7th Cir.1956) except § 1655 actions from the general rules of in rem jurisdiction. *Huntress* simply addressed whether it was necessary to obtain personal jurisdiction over a defendant to proceed under § 1655; it held

that because actions brought under § 1655 were actions in rem, jurisdiction depended on the location of the property, not on the ability to secure personal jurisdiction. *Id.* It did not address whether attachment of the res was necessary.

█ Finally, *Overby v. Gordon,* 177 U.S. 214, 221, 20 S.Ct. 603, 44 L.Ed. 741 (1900) and *Roller v. Holly,* 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520 (1900) demonstrate only that preliminary seizure is not necessary when a lien is in place on real property. In other words, a lien is an alternative manner by which a court may exercise dominion or control over property. *See Roller,* 176 U.S. at 406, 20 S.Ct. 410 (stating that if a lien exists on real property, the court may proceed as though the property had been seized by attachment or execution); *Overby,* 177 U.S. at 221, 20 S.Ct. 603 (citing the *Roller* exception as an alternative to "seizure or its equivalent"). *Overby* and *Roller* do not hold that custody or control over property is ever dispensable in an in rem action. *Overby* specifically noted that when an action is purely in rem, "a preliminary seizure of property is necessary to the power of the court to adjudicate at all." When an action is "in form in personam," jurisdiction may proceed "as one in rem against the property of which preliminary seizure or its equivalent has been made" *or* a preliminary seizure is unnecessary if the suit involves a lien affecting real property. *Overby,* 177 U.S. at 221, 20 S.Ct. 603. *Overby* and *Roller* firmly reinforce the need for the court to obtain custody and control of a res in order to exercise in rem jurisdiction.

Contrary to Alsdorf's assertion, the requirement of an arrest does not render Fed.R.Civ.P. 4(n)(1) superfluous. Rule 4(n)(1) states: "If a statute of the United States so provides, the court may assert jurisdiction over property. Notice to claimants of the property shall then be

sent in the manner provided by the statute or by service of a summons under this rule." The comment to Rule 4(n) states that "[t]his subdivision provides for in rem and quasi in rem jurisdiction. Paragraph (1) incorporated any requirements of 28 U.S.C. § 1655 or similar provisions bearing on seizures or liens." Rule 4(n)(1) assumes that jurisdiction over property and jurisdiction over, or notice to, a person are different concepts. Rule 4(n)(1) states that jurisdiction may be exercised over property and *then* notice should be sent in accordance with the procedures set forth in, for example, § 1655. As § 1655 pertains to procedures for personal service, it is not helpful in determining the appropriate procedures for acquiring in rem jurisdiction. Rule 4(n)(1) likewise does not address the procedures for obtaining in rem jurisdiction.

■ In order for the Illinois court to have obtained prior exclusive jurisdiction, the painting must have been in the custody or control of that court. Such a conclusion is consistent with the general and long-standing rules regarding in rem jurisdiction. Actions under § 1655 are no different from any other in rem proceedings. Therefore, Alsdorf has failed to establish that the Illinois court obtained jurisdiction to the exclusion of this Court.

Alsdorf argues that the Court's seizure of the painting does not vest it with jurisdiction because "[p]ossession obtained through an invalid seizure neither strips the first court of jurisdiction nor vests it in the second." *$79,123.49*, 830 F.2d at 98. Evidently, the only basis for Alsdorf's claim that the seizure was invalid is the contention that the Illinois court already had jurisdiction. Because the Illinois court never obtained jurisdiction over the painting, the seizure was not invalid. The seizure, therefore, did vest jurisdiction in this Court.

Because this Court obtained jurisdiction upon seizure of the painting, a process which was not and has not been attempted in the Illinois action, Alsdorf's motion is denied.

### III. Motion to Transfer

Alsdorf argues in the alternative that this action should be transferred to the Northern District of Illinois. In support of this argument, she relies on the first-to-file rule and on 28 U.S.C. § 1404(a), which allows for venue transfer for the convenience of the parties and witnesses and in the interests of justice.

### A. First-to-file Rule

■ The first-to-file rule allows a "district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir.1991). It may be invoked when the similar complaint involves the same parties and issues. *Id.* at 625. The purpose of the rule is to "avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir.1979). Therefore, a court should consider whether efficiency is served by a decision to invoke the first-to-file rule. *Id.; Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir.1982). On the other hand, when there is evidence of bad faith, or anticipatory suit and forum shopping, a court may refuse to invoke the first-to-file rule. *Alltrade*, 946 F.2d at 628.

■ There is little to support the use of the first-to-file rule here. Although the Illinois action was filed first, any reason to transfer or stay ends there. The issues are not precisely the same. Although both actions are meant to determine the rightful owner of the painting, the instant ac-

tion also requires a determination as to whether the painting is subject to civil forfeiture. The parties are not the same. The Illinois action involves only Alsdorf and Bennigson. The Government is an additional party to this action. Moreover, efficiency is not served through transfer or a stay. Because the Illinois court does not have jurisdiction over the painting (this court's jurisdiction is exclusive until it relinquishes it),[4] there is no risk of conflicting judgments or duplicative efforts. The Court finds no basis for the application of the first-to-file rule.

## B. Section 1404(a)

■■■■ Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In deciding whether to transfer venue, a court balances the deference given to the plaintiff's choice of forum with the burden of litigating in that forum. *Gherebi v. Bush,* 352 F.3d 1278, 1302 (9th Cir.2003), *vacated on other grounds,* —— U.S. ——, 124 S.Ct. 2932, 159 L.Ed.2d 835 (2004). The defendant must make a strong showing of inconvenience before the plaintiff's choice is upset. *Id.* Accordingly, "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id.* at 1303 (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

Alsdorf argues that this action should be transferred to the Northern District of Illinois, where she resides. The Northern District of Illinois is a district where this

suit might have been brought. *See* 28 U.S.C. § 1355(b)(1)(A), (B) (allowing in rem civil forfeiture actions to brought in any venue where acts or omissions giving rise to the forfeiture occurred or in any venue allowed for by 28 U.S.C. § 1395).

■■■■ The present forum serves the interests of two of the parties-the Government and Bennigson. Although Bennigson does not reside in this district, he does reside in the state of California. His counsel is located in this district, and counsel for the Government is located in this district. *See Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,* 89 F.R.D. 497, 501 (C.D.Cal.1981) (considering whether the parties must bear the expense of counsel traveling to a distant forum). Transfer to Illinois serves only the interests of Alsdorf. Alsdorf has not made a showing that this forum is particularly inconvenient for her. Although she may or may not have to travel to this forum, she has counsel here. Bennigson does not have counsel in Illinois. Therefore, transfer to Illinois would be more costly for Bennigson than maintaining the action here would be for Alsdorf.

The convenience of witnesses is the most important factor, however. *See id.* at 501. "In assessing the effect of a transfer on the convenience of witnesses, courts consider the effect of a transfer on the availability of certain witnesses, and their live testimony, at trial." *Id.* Alsdorf is the only witness located in Illinois. She has not made a showing that is she is unable to travel. Other witnesses may include Jackson, Bernard, Imbert, Didier, Tunkl, and Bennigson. Not all of these witnesses are in this district; neither do they reside in

---

**4.** The Government argues that the Illinois court can continue to exercise jurisdiction "to the extent no actual conflict arises between the two actions." However, it is not clear how a conflict could be avoided. Both courts

are to determine the rights to the painting and as Alsdorf argues, "[t]he risk of contradictory rulings is real and certainly of great concern." Aldorf's Reply to Opposition to Motion to Dismiss, at 11.

the Northern District of Illinois. Several witnesses, including Hahn, Bernard, Tunkl, and Burt do reside in this district. If the case were transferred, they could not be compelled to testify. *See id.* at 501 ("Thus, transfer may be denied when witnesses either live in the forum district or are within the 100–mile reach of the subpoena power"). Alsdorf has not made a strong showing that transfer is more convenient for the witnesses.

To establish that transfer is in the interest of justice, Alsdorf argues that the action in Illinois, as the first filed, will address the issues of this action, and that the Court should act so as to avoid multiple actions. *See Lee v. Lockheed Martin Corp.*, No. C 03–1533 SI, 2003 WL 22159053, 2003 U.S. Dist. LEXIS 16301 (N.D.Cal. Sept. 15, 2003) (citing *A.J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384 (9th Cir.1974)). The Court has already determined that it has exclusive jurisdiction over the painting that is the subject of this action and the action in Illinois. Therefore, the court in Illinois lacks jurisdiction to proceed. There will not be duplicative litigation if the Court declines to transfer venue.

 Alsdorf argues that venue is not proper in this district. Section 1355(b)(1)(A) of Title 28 of the United States Code provides that "[a] forfeiture action or proceeding may be brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." Section 1355(d) states that "[a]ny court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in another district such process as may be required to bring before the court the property that is the subject of the forfeiture action." Because the painting was transported from this district to Illinois, and this transportation in interstate commerce is the basis for the forfeiture action,

at least one of the acts or omissions giving rise to the action occurred in this district. Furthermore, the fact that the painting is currently in Illinois is irrelevant. It is within the Court's power to bring the painting before the Court. The painting remains in Illinois because the parties so stipulated, with the understanding that Alsdorf's possession of the painting would not serve as the basis for a challenge of jurisdiction. *See* Gov't Opposition to Claimaint's Motion to Dismiss, Ex. E at ¶ 2.

Venue is proper in this district. The Court declines to transfer this action to the Northern District of Illinois.

## IV. Motion to Dismiss Cross–Complaint

Alsdorf argues that the Court should dismiss Bennigson's cross-claim against her (1) for lack of personal jurisdiction; (2) because it is a compulsory counterclaim in the Illinois action; and (3) because Bennigson is engaging in claim splitting.

### A. Personal Jurisdiction

 The plaintiff bears the burden of establishing that personal jurisdiction exists. *See Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002).

A federal court may exercise personal jurisdiction that "comport[s] with the state long-arm statute, and with the constitutional requirement of due process." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir.1995). California's long-arm statute extends to the limits of due process. *See* Cal.Code Civ. Pro. § 410.10.

 Due process considerations require that non-resident defendants have certain minimum contacts with the forum state, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Interna-*

*tional Shoe, Co. v. State of Washington Office of Unemployment,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

 The Court may exercise specific jurisdiction over a defendant if the controversy is related to or "arises out of" a defendant's contacts with the forum state. *See Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The Ninth Circuit has established a three-part test to determine whether courts may exercise specific personal jurisdiction: purposeful availment, relatedness of claims, and reasonableness. *See Roth v. Marquez,* 942 F.2d 617 (9th Cir.1991). The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or third person." *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 816 n. 9 (9th Cir.1988). Once the first two parts are met, the court's exercise of jurisdiction is presumptively reasonable, and defendants bear the burden of establishing a compelling case that the exercise of jurisdiction would be unreasonable. *Id.* The reasonableness part is resolved employing a seven-part balancing test: 1) extent of purposeful interjection; 2) burden on the defendant; 3) extent of conflict with the sovereignty of the foreign state; 4) forum state's interest in adjudication; 5) most efficient judicial resolution; 6) convenience and effectiveness of relief for plaintiff; and 7) availability of an alternative forum. *Id.*

## 1. Purposeful Availment

Bennigson makes the following allegations with regard to Alsdorf's forum-related activities: (1) Alsdorf sent the painting to Los Angeles for the purposes of exhibition and sale for a period of eight months; (2) she withheld the painting from Bennigson in this district after learning of his claim and receiving documents confirming

that the painting had been stolen; (3) she conspired to remove the painting from the forum with knowledge that it was stolen; (4) she did in fact remove the painting from the forum, even after receiving notice of Bennigson's state court complaint and application for a temporary restraining order.

These contacts are not "random, fortuitous, or attenuated." Alsdorf ostensibly could have chosen any art dealer in any part of the country to help sell her painting. However, she chose an art dealer in California. She made an agreement with the dealer, a California resident, that he would negotiate on her behalf in selling the painting. She authorized her painting to be shipped to, displayed in, and sold in California. She held herself out as the owner of the painting in California. The painting arrived in California and stayed in California for eight months solely as a result of decisions made by Alsdorf. None of these actions happened "fortuitously." Additionally, the connection with California was not "random;" the painting remained in the state for a period of eight months. The connection to California is not "attenuated"-the painting was actually located in this state for the period of time for which it was for sale. It was certainly foreseeable that offering to sell the painting in California could give rise to a dispute over the ownership of the painting in California.

## 2. Relatedness

Alsdorf's forum-related activities are related to, and gave rise to, Bennigson's cross-claim. Specifically, Bennigson bases his replevin and Cal.Penal Code § 496 claims on Alsdorf's retention and removal of the painting from California after it came to her attention that her ownership was in dispute. It does not matter whether at the time Alsdorf arranged for the

painting to be transported from California to Illinois, she knew that Bennigson, the alleged owner of the painting, was a California resident. The action of removing the painting took place in California, with directions to a California art gallery and California shippers; this action gives rise to Bennigson's claim for replevin.

Additionally, Bennigson's claim arises directly from Alsdorf's allegedly wrongful possession and claim of ownership of the painting. During the eight months she held the painting out for sale in California, she held herself out as the rightful owner of the painting. This claim to ownership gives rise to and is related to Bennigson's replevin and Cal.Penal Code § 496 claims.

### 3. Reasonableness

Alsdorf has not made a compelling case that the exercise of jurisdiction is unreasonable. While her "purposeful interjection" was relatively limited, the Court has concluded that it has satisfied the "minimum contacts" test. The burden on Alsdorf of litigating in this forum is no greater than what any litigant faces in a foreign forum. Plaintiff has identified no conflict between this Court's exercise of jurisdiction and the sovereignty of the state of Illinois. Illinois' interest in protecting its citizens is too broad an interest to affect the outcome here: such an interest would arise in every case where another court asserted jurisdiction over an Illinois resident. California, however, has an expressed interest in Nazi-looted artworks. *See* Cal.Code Civ. P. § 354.3 (extending the statute of limitations for filing suit against galleries and museums).[5]

California is the best forum for efficient judicial resolution. A civil forfeiture proceeding, to which Alsdorf and Bennigson are claimants, is already proceeding in this Court. This Court has exclusive jurisdiction over the painting, and accordingly, jurisdiction to determine the rightful owner of the painting. Therefore, in terms of convenient and effective relief for the plaintiff, this forum is superior. In fact, because this Court has exclusive jurisdiction over the painting, no other forum is available to determine its ownership. Far from the exercise of jurisdiction being unreasonable, this Court's exercise of jurisdiction is the most reasonable and efficient for resolution of this case.

Alsdorf has already appeared as a claimant in this action and submitted to this Court's in rem jurisdiction. It is not unreasonable to subject her to this Court's in personam jurisdiction to resolve the same issues. In *United States v. All Right, Title and Interest in the Contents of the Following Accounts at Morgan Guaranty Trust Co. of New York*, No. 95 CIV. 10929 HB THK, 1996 WL 695671 (S.D.N.Y. Dec.5, 1996), the court considered the reasonableness of allowing cross-claims, based on *in personam* jurisdiction, to be asserted along with civil forfeiture claims. The court concluded that it would be "unfair to subject a claimant in an in rem proceeding to in personam liability without satisfying [the] fundamental prerequisites" of personal jurisdiction. *Id.* at *6. However, the main source of the court's concern was that an "unsuspecting claimant," appearing in court solely to adjudicate his or her rights to property, would be subjected to

---

5. The Court recognizes that this provision may not apply to Alsdorf, who is neither a museum nor a gallery. The Court relies on this provision only to illustrate California's interest in adjudicating the dispute. If, as Alsdorf contends, California's policy in favor of recovery of Nazi-looted artwork does not extend to Alsdorf, but actually favors her retention of the painting, that does not lessen California's interest in the subject matter of the suit.

personal jurisdiction and accordingly a personal judgment. *Id.* at *7.

 Alsdorf was clearly on notice of the claims against her when she appeared in the *in rem* action. The court is not concluding that merely appearing in the *in rem* action is sufficient to establish personal jurisdiction. Purposeful availment and relatedness are still necessary. *See All Right, title and Interest,* 1996 WL 695671, at *16 ("[C]ross-claimants must properly obtain personal jurisdiction in order to lodge their cross-claims"); *see also United States v. 51 Pieces of Real Property, Roswell, New Mexico,* 17 F.3d 1306 (10th Cir. 1994) (holding the claimant does not consent to personal jurisdiction by appearing in *in rem* action). *But see United States v. Contents of Accounts No. 3034504504 & 144071443,* 971 F.2d 974, 980 (3d Cir.1992) (holding that a claimant submits to personal jurisdiction by appearing in an in rem civil forfeiture action). The court does conclude, however, that the exercise of personal jurisdiction is *reasonable* on this basis. The Court is already adjudicating Alsdorf's claim to the painting because she filed a claim. It is not unreasonable for the Court to adjudicate all claims against her arising from her possession of the painting. *Cf. Mosher v. Tate,* 182 F.2d 475 (9th Cir.1950) (in admiralty law, allowing *in personam* jurisdiction in addition to *in rem,* without any additional service of process, and concluding that defendants had "ample notice of the proceeding and appeared and filed their claim").

### 4. California Case

Alsdorf urges this Court to follow the holdings of the California Superior Court and Court of Appeal, which found that California lacked personal jurisdiction over Alsdorf. The Court elects not to do so (nor to defer ruling until the California

Supreme Court issues a decision) for several reasons.

First, Bennigson's claim in this action is based on slightly different facts than in the California state action. In this action, he bases his replevin claim explicitly on Alsdorf's removal of the painting from California, and therefore, there is a stronger relationship between Alsdorf's forum-related activities and Bennigson's suit than was considered by either California court.

Second, and most importantly, at the time the California courts considered this issue, no civil forfeiture case was pending. The civil forfeiture case presents a strong argument in favor of the reasonableness of this Court's jurisdiction. It was not a factor in the analysis of the other two courts that considered this issue. Because the argument in favor of personal jurisdiction presented before this Court is different from the argument presented to the California courts, the Court declines to rely on those holdings.[6]

### B. Compulsory Counter–Claim

 Alsdorf argues that Bennigson's cross-claim is a compulsory counterclaim in the Illinois action. Rule 13(a) of the Federal Rules of Civil Procedure requires a defendant to file a counterclaim for any claim he may have against the plaintiff that "arises out of the same transaction or occurrence that is the subject matter" of the plaintiff's claim. A court may dismiss an action that should have been brought as a compulsory counterclaim in a previously-filed action. *See Graumman Sys. Support Corp. v. Data Gen. Corp.,* 125 F.R.D. 160 (N.D.Cal.1988).

The Court declines to dismiss Bennigson's action because it has concluded that the Northern District of Illinois lacks ju-

---

**6.** Nor do these holdings have collateral estoppel effect. An appeal is currently pending.

*See Watson v. Roberts, Scott & Co., Inc.,* 466 F.2d 1348, 1349 (9th Cir.1972).

risdiction. Additionally, there is no indication that the Northern District of Illinois has personal jurisdiction over Bennigson such that he would be required to plead a claim there, and Bennigson has moved to dismiss Alsdorf's claim on that basis. It is not reasonable for the Court to conclude that Bennigson is required to plead a claim in a court that has no subject matter or personal jurisdiction.

## C. Claim Splitting

Alsdorf argues that because the California case is still pending, Bennigson has engaged in claim splitting by filing a nearly identical cross-claim in this Court. The Court recognizes that it might appear unseemly for Bennigson to obtain a stay in the Illinois action on the basis that the California case is pending, and then to file a second claim here in apparent violation of the stay. However, the Court also recognizes that the civil forfeiture action filed by the government has been a "wild card" in the dispute between Alsdorf and Bennigson that has substantially affected their legal maneuvering. This Court has now concluded that because it is the only Court to have custody or control over the painting, it is the only Court with jurisdiction. This result was not within the control of either Alsdorf or Bennigson. Accordingly, the Court accepts Bennigson's argument that by filing the cross-claim, he is not attempting to split claims. Rather, he is seeking to preserve his claims in the event this action goes forward. Bennigson has represented to the Court that he does not intend to prosecute the California action simultaneously with his cross-complaint. The Court accepts his word.

## V. Conclusion

Alsdorf's motion to dismiss the forfeiture claim is DENIED. Her motion to transfer to the Northern District of Illinois is DENIED. Her motion to dismiss Bennigson's cross-claim is DENIED.